IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT TOMKINS, JOSEPH G. HUSK, and ELIZABETH LEUNG on behalf of themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) **Civil Action No. 3:12-cv-01082 (WWE)** |
| vs. | ) Filed on August 22, 2013 |
| AMEDISYS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER AND CORRECTIVE MAILING TO ADDRESS DEFENDANT'S IMPROPER COMMUNICATION WITH ABSENT CLASS MEMBERS**

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND .....................................................................................................3

III. ARGUMENT...........................................................................................................5

    1.   A Defendant's Unilateral Communications with Putative Class
        Members Are Improper. ................................................................................5

    2.   Defendant Cannot Impose An Arbitration Agreement At This
        Stage.............................................................................................................10

    3.   Defendant Has Waived Its Right To Rely On An Arbitration
        Provision In This Case ................................................................................11

IV.  CONCLUSION......................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Abdallah v. Coca-Cola Company*, 1999 WL 314119 (N.D. Ga. May 14, 1999) ............................ 9

*Austen v. Catterton Partners V LP*, 831 F. Supp. 2d 559 (D.Conn. 2011) ..................................... 6

*Balasanyan v. Nordstrom, Inc.*, 2012 U.S. Dist. LEXIS 30809
  (S.D. Ca. Mar. 8, 2012) ................................................................................................. 10, 11

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
  50 F.3d 388 (7th Cir. Wis. 1995) ........................................................................................ 11

*Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. Apr. 9, 2001) ............................... 6

*Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) ........................................... 6

*Georgine v. Amchem Prods.*, 160 F.R.D. 478, 489-502 (E.D. Pa. Mar. 1, 1995) .......................... 6

*Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981) ................................................................................ 5

*Haffer v. Temple University of Commonwealth System of Higher Education*,
  115 F.R.D. 506 (E.D. Pa. Mar. 3, 1987) ................................................................................ 8

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989) ................................................ 5

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.
  Loan Litig.*, 418 F.3d 277 (3d Cir. 2005) .............................................................................. 8

*In re Currency Conversion Fee Antitrust Litig.*,
  229 F.R.D. 57 (S.D.N.Y. 2005) ........................................................................................... 10

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F.Supp. 2d 237 (S.D.N.Y. 2005) ............................................................................... 6, 10

*In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010) ........................................................................ 11

*In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988) ........................................... 6, 9, 10

*Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) ............................. 6, 8

*Mevorah v. Wells Fargo Home Mortgage, Inc.*, 2005 Dist. LEXIS 28615
  (N.D. Cal. Nov. 17, 2005) ..................................................................................................... 9

*Molyneux v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 156173
 (S.D. Iowa July 8, 2011) ........................................................................................ 7, 10, 11

*Pollar v. Judson Steel Corp.*, 1984 U.S. Dist. LEXIS 19765
 (N.D. Cal. Feb. 3 1984) ................................................................................................... 9

*Rossini v. Ogilvy & Mather*, 798 F.2d 590 (2d Cir. 1986) ................................................... 9

*Subway Equip. Leasing Corp. v. Forete*, 169 F.3d 324 (5th Cir. 1999) ........................... 11

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. Sept. 27, 2010) ...................... 7

*Williams v. Securitas Sec. Servs. USA, Inc.,* 2011 U.S. Dist. LEXIS 75502
 (E.D. Pa. July 13, 2011) ........................................................................................ 7, 10, 11

*Wu v. Pearson Educ. Inc.*, 2011 U.S. Dist. LEXIS 60881 (S.D.N.Y. June 7, 2011) ...................... 7


**STATUTES**                                                                                                   **PAGES**

29 C.F.R. § 216(b) ................................................................................................................ 1

Fed. R. Civ. P. 23(d) ............................................................................................................ 5

iv

In light of recent revelations concerning Defendant's dissemination of a proposed Dispute Resolution Agreement to opt-in Plaintiffs and putative class members intended to prevent them from participating in this litigation, Plaintiffs hereby move the Court pursuant to Local Rule 7(a)(3) for expedited consideration of this motion to immediately authorize Plaintiffs to issue corrective notice and the entry of an order imposing additional corrective measures as detailed below.

## I.    INTRODUCTION

On September 9, 2012, Plaintiffs filed their § 216(b) Motion for Conditional Certification.  On July 10, 2013, in response to this Court's order inviting Plaintiffs to re-file their motion to reflect the change in named plaintiffs, Plaintiffs re-filed their Motion for Conditional Certification.[1]  That motion is currently pending.

Class counsel have recently learned that while Plaintiffs' notice motion has been pending, Defendant Amedisys has improperly interfered with the notice process.  Specifically, on August 6, 2013, Amedisys emailed its employees with a link to documents indicating that they would be bound by a "new" arbitration agreement policy precluding participation in class and collective actions, including this one, unless they affirmatively opted out of the agreement within 30 days. The document, entitled "Dispute Resolution Agreement" (the "Agreement"), seeks to retroactively divest this Court of jurisdiction over the claims pending in this case unless the putative class members affirmatively opt-out of the agreement.

Moreover, the method by which Amedisys gave notice to its employees was so flawed as to hinder their ability to even learn of the arbitration "agreement" that Amedisys seeks to subject them to given that putative class members were not directly sent or hand-delivered the

---

[1] Plaintiffs have also alleged a Rule 23 class of per visit clinicians in Pennsylvania, under state law.  The class certification motion for that claim has not yet been filed.

ORAL ARGUMENT REQUESTED

documents.  *See* Declaration of Tammy Smith (hereinafter "Smith Decl.") attached hereto as Ex. A.  Specifically, putative class members received a generic email alerting them to an unspecified change in policy, and were unable to access the relevant materials unless they clicked on a link, which brought them to an Amedisys Arbitration Program "Acknowledgment" form on the Amedisys website.  *See* Ex. A ¶ 6.  Some putative class members, like Ms. Smith, were likely reluctant to "acknowledge" or "agree" to something they were unfamiliar with, and many of those persons may reasonably have thus ended the process there, without even seeing the new "Agreement" they were to be bound by.  *Id.*  Furthermore, any putative class member who fails to understand the Agreement or the instructions for opting out, or who fails to follow the opt-out procedures will purportedly be barred from participating in this, or any other, lawsuit against Amedisys and, instead, will be forced to file an individual arbitration proceeding to resolve their claims.

These communications from Amedisys interfere with the notice process in this collective action, which should be handled under Court supervision, and not by one party unilaterally contacting putative class members with one-sided information and seeking agreement to waive their rights to join the class case.  The communications suffer from a wide range of flaws, including:

1. <u>Lack of Transparency:</u>  Putative class members were informed of the new arbitration policy by email, but that email failed to indicate that it so much as concerned arbitration.  On August 6, 2013, Martha Williams, Amedisys's Chief Human Resources Officer, emailed putative class members, but the email contained no specific language regarding the arbitration agreement or instructions on how to access the materials.  Specifically, the email states:  "This e-mail contains important time-sensitive materials that the Company requires that you read as they could affect your legal rights."  *See* Email from Martha Williams, attached to Ex. A as Ex. 1.[2]  However, the email did not actually

---

[2] *See also* Amedisys's Arbitration Agreement Cover Letter, attached to Ex. A as Ex. 2; Amedisys's Dispute Resolution Agreement, attached to Ex. A as Ex 3; Amedisys's Arbitration

2

contain the materials, but instead contained a link to an "acknowledgement" page which the employee had to acknowledge *before* being able to view the documents being acknowledged. Ex. A;

2. <u>Improper Jargon and Misleading Statements:</u>  The Arbitration Agreement, even once found, does not make clear its import.  The agreement consists of more than (7) seven single-spaced pages of legal jargon, technical language, and internal cross references, all of which make the Agreement difficult to understand.  It also includes incomplete and misleading statements about the class members' legal rights, the purpose and effect of the Agreement, and the procedures for opting out of the Agreement;

3. <u>Interference with the Judicially Supervised Notice Process</u>:  The Agreement seeks to circumvent the decision, entrusted to this Court based on a long-filed motion, as to whether clinicians may opt into this case, whether notice should issue, and what the notice should say.

4. <u>Improper Divestiture of Opt-in Rights</u>:  The Agreement is self-executing, and applies regardless of whether class members sign or agree with it.  It also seeks to function retroactively, as a release of claims that are already pending.

For all of the above reasons, and because this Court is vested with supervisory authority over Defendant's communications with putative class members, Plaintiffs respectfully ask this Court to enter the proposed Order.

**II.**   **BACKGROUND**

On August 6, 2013, Amedisys's Chief Human Resources Officer, Martha Williams, emailed putative class members and attached a link but provided no details regarding what the link contained.  *See* Ex. 1.  The Email stated: "This email contains important time-sensitive materials that the Company requires that you read as they could affect your legal rights.  Please click here to receive them." *Id*.

---

Program Frequently Asked Questions ("FAQs"), attached to Ex. A as Ex. 4; an August 13, 2013 Email from Ms. Martha Williams, attached to Ex. A as Ex. 5; and an August 20, 2013 Email from Ms. Martha Williams, attached to Ex. A as Ex. 6.

3

As stated above, putative class members could not access these important materials until they "acknowledged" the Amedisys Arbitration Program form. *See* Ex. A ¶¶ 5-6. More troubling, however, is that putative class members only have (30) thirty days to opt-out of the Agreement to preclude being legally bound to the Agreement and exercise their rights to participate in this action. *See* Ex. A, Exs. 1 to 6. Among other things, the Agreement seeks to release putative class members' right to a trial as well as their right to participate in a class, collective, or representative action. *See* Ex. 2 at pp. 4-5. The Agreement further provides that the proposed release shall apply to the currently pending class action filed against Amedisys by employees across the country. *Id.* at p. 6. However, the Agreement is silent on the details of the *Tomkins* case and makes no mention that a motion for conditional certification is pending. The Agreement also purports to be effective without a signature or other affirmative signal of consent from class members:

> If Employee is not a named plaintiff, has not joined as a plaintiff, or is not part of a conditionally or certified class in the *Tomkins* Action, but would like to potentially participate in the *Tomkins* Action as a class member or plaintiff, Employee may opt out of this agreement by following the procedure set forth in Section 9, below. By not opting out of this Agreement, however, Employee will be giving up the right to represent others in litigation and the right to participate in any class, collective, or representative action in a court of law, including, without limitation, the *Tomkins* action . . .

*See* Ex. 2 at p. 6. The imposition of the agreement without any signature or affirmative indication of consent from the employee is particularly insidious because employees were not directly sent or hand-delivered the agreement and cover letter. Instead, employees were required to acknowledge the Amedisys Arbitration Program before they could even access such important materials. *See* Ex. A, ¶¶ 5-6. For some employees, the mere requirement to "acknowledge" the Arbitration Program before accessing it would have been sufficient to deter many from learning

4

about it and failing to opt out to avoid the mandatory arbitration provisions. The Agreement is also vague, confusing, and written in legalistic language. While the Agreement identifies the *Tomkins* case by name, it does not contain any other information about the case, and would not allow one of Defendant's employees to determine whether he or she is similarly situated to the named Plaintiffs and should join the action, or if they would be forfeiting any rights or benefits incident to this suit by failing to opt out of the Agreement. Further, a number of the Agreement's provisions are said to apply (or not apply) depending on a subsequent determination of applicable law.

## III.   ARGUMENT

Courts have supervisory authority over a defendant's communications with putative class members. Fed. R. Civ. P. 23(d). Because of the potential for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981). The same control applies in collective actions not governed by Rule 23. *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989) (citing *Gulf Oil Co. v. Bernard* and noting that a court's interest in overseeing communications with potential class members in § 216(b) actions is similar to that in Rule 23 actions, and that "a trial court has substantial interest in communications that are mailed for single actions involving multiple parties").

   1.   **A Defendant's Unilateral Communications with Putative Class Members Are Improper.**

This Court, along with others in the Second Circuit, has long recognized the impropriety of communications by defendants with putative class members, especially where the goal of such communications is to cause relinquishment of class members' legal rights or to deter them from joining a class or collective action. *See, e.g., Austen v. Catterton Partners V LP*, 831 F.Supp. 2d

559, 568 (D.Conn. 2011) ("District courts have imposed significant pre-certification communication [limitations] . . . they have done so because the parties engaged in serious abuses, such as giv[ing] false, misleading, or intimidating information, concealing material information, or attempting to influence the decision about whether to seek exclusion from a class."); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 2d 237, 253 (S.D.N.Y. 2005) ("[W]hen a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).[3]

   Although Defendant will undoubtedly characterize its communications with Plaintiffs and putative class members as an update to its employment policies, in reality, the stealth dissemination of this "policy" in the midst of briefing on Plaintiffs' pending Notice motion was nothing more than an attempt to exclude class members from this case by surreptitiously erecting a new barrier to participation and creating a situation in which employees rights to opt into this action would be passively relinquished before they were even made aware of such rights through

---

[3] *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) (defendants barred from soliciting decisions to opt-out of the class); *In re School Asbestos Litigation*, 842 F.2d 671, 680 (3d Cir. 1988) (misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally"); *Haffer v. Temple University of Commonwealth System of Higher Education*, 115 F.R.D. 506, 507-14 (E.D. Pa. Mar. 3, 1987) ("Courts often issue protective orders after parties initiate improper communications with class members"); *Dondore v. NGK Metals Corp.*, 152 F.Supp.2d 662, 666 (E.D. Pa. Apr. 9, 2001) ("If defense counsel or counsel otherwise adverse to their interests is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the action, the benefits of class action litigation could be seriously undermined"); *Georgine v. Amchem Prods.*, 160 F.R.D. 478, 489-502 (E.D. Pa. Mar. 1, 1995) ("[U]nilateral communications with class members by various attorneys were misleading and made it unlikely that class members, who received these communications or were informed of their contents, made an informed choice to exclude themselves from the class").

the Notice process. Such one-sided, unsupervised and unapproved communications with absent class members have been repeatedly recognized as problematic and requiring corrective action. *See, e.g.*, *Williams v. Securitas Sec. Servs. USA, Inc.,* 2011 U.S. Dist. LEXIS 75502 (E.D. Pa. July 13, 2011). For example, in *Williams*, the court addressed actions by defendant that were nearly identical to those here and found them plainly improper, explaining:

> Securitas argues that invalidating the Agreement merely because this class action lawsuit is pending is equivalent to preventing it from adopting any arbitration policy at all. Whatever right Securitas may have to ask its employees to agree to arbitrate, its current effort, which specifically references this lawsuit, is confusing and misleading and clearly designed to thwart unfairly the right of its employees to make an informed choice as to whether to participate in this collective action under the FLSA. Since the Agreement by its terms will directly affect this lawsuit, this court has authority to prevent abuse and to enter appropriate orders governing the conduct of counsel and the parties.

*Id.* at 10. Other courts confronted with such behavior by defendant employers have come to the same conclusion. *See, e.g., Molyneux v. Securitas Sec. Servs. USA, Inc.,* 2011 U.S. Dist. LEXIS 156173 (S.D. Iowa July 8, 2011) ("The court agrees that the [arbitration] agreement is not merely a new employment policy . . . but instead appears to be a concerted, targeted effort to have its employees waive their right to proceed in this particular, and other similar, ongoing litigation."); *Wu v. Pearson Educ. Inc.*, 2011 U.S. Dist. LEXIS 60881 at *18 (S.D.N.Y. June 7, 2011) ("[A] communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation."); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 755-56 (9th Cir. Sept. 27, 2010) ("In the face of evidence of coercive behavior by a

party opposing a class, district courts may regulate communications with class members related to the notice and opt-out processes.").[4]

Similarly, in *Kleiner*, the Eleventh Circuit invalidated a telephone campaign to solicit opt-outs from a class action suit, finding that the solicitations were coercive and interfered with the court's power to supervise the suit:

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought." In this case, the carefully constructed edifice of check and countercheck, notice and reply, was obliterated when the telephones were lifted from their cradles. The Bank's actions obstructed the district court in the discharge of its duty to "protect both the absent class and the integrity of the judicial process by monitoring the actions before it." The Bank's subterfuge and subversion constituted an intolerable affront to the authority of the district court to police class member contacts . . .

751 F.2d at 1203 (citations and footnotes omitted).

Unlike the defendants in almost all of these cases, who actually hand-delivered or directly sent a hard copy of the Arbitration Agreement to putative class members, Amedisys made it more even challenging for employees by emailing the Agreement and then requiring them to first "acknowledge" receipt before they could learn how such an Agreement could impact their rights. Moreover, the Agreement fails to provide an adequate explanation of the existence of Plaintiffs' pending motion for conditional certification or the extent to which the recipients' legal rights are

---

[4] *See also In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,* 418 F.3d 277, 310 (3d Cir. 2005) ("Because the advantage of class action litigation comes at the cost of binding absent class members through the res judicata effect of litigation over which they lack control, the district courts must closely monitor the notice process and take steps to safeguard class members from 'unauthorized [and] misleading communications from the parties or their counsel'").

8

potentially impacted by their actions – and more significantly, by mere inaction.  Thus Amedisys has not only sought to discourage the class members from participating in the instant litigation, it has also sought, through the Agreement, to divest the putative class members of their right to participate in the pending litigation by automatically requiring them to arbitrate their claims.  Further, Defendant has failed to notify either Plaintiffs' Counsel or the Court about the drafting and dissemination of the Agreement, and thus precluded any meaningful opportunity for input in the process before it took these steps.

These various problems provide ample justification for immediate judicial intervention to safeguard the rights of the putative class members.  Indeed, putative class members have an ongoing employment relationship with Defendant that renders its communication inherently coercive and provides such clear potential for abuse often necessitating corrective action.  *See In re School Asbestos Litigation,* 842 F.2d at 680; *Rossini v. Ogilvy & Mather*, 798 F.2d 590, 601 (2d Cir. 1986) (communications with current employees subject to abuse due to economic relationship); *see also Mevorah v. Wells Fargo Home Mortgage, Inc*., 2005 Dist. LEXIS 28615, * 16 (N.D. Cal. Nov. 17, 2005) (when a defendant goes beyond merely providing information to absent class members, such as by soliciting information or declarations, it thus commits employees who are potential class members to a set of facts that may be adverse to their interest and without their having been fully informed of all aspects of the case); *Pollar v. Judson Steel Corp*., 1984 U.S. Dist. LEXIS 19765, *1-2 (N.D. Cal. Feb. 3 1984) ("The Notice may seriously prejudice the rights of the absent class members by failing to disclose the existence of the class case and by causing confusion concerning their rights"); *Abdallah v. Coca-Cola Company*, 1999 WL 314119, *7 (N.D. Ga. May 14, 1999) ("[T]here is an inherent danger that these types of

9

internal communications could deter potential class members from participating in the suit out of concern for the effect it could have on their jobs.").

        **2.**        **Defendant Cannot Impose An Arbitration Agreement At This Stage.**

The same principles have been applied to invalidate attempts to impose arbitration clauses while class action suits were pending. A ruling from *In re Currency Conversion Fee Antitrust Litigation* invalidated arbitration provisions imposed on putative class members after suit was filed. In that case, one-sided communications in the face of an ongoing business relationship were held to be inherently coercive and improper, and therefore invalid:

> A unilateral communications scheme, moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive. Here, for example, the potential class consisted of cardholders who depend on defendants for their credit needs. These cardholders have no other realistic source of information regarding this litigation. Thus, in light of the cardholders' dependence on defendants for their future credit needs and information, this Court finds that Chase's and Citibank's actions are potentially coercive and improper.
>
> . . . . .
>
> In sum, defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation. Thus, this Court holds that those arbitration clauses may not be enforced because Chase and Citibank added them, without notice, after this litigation commenced.

*In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp. 2d 237, 253-54 (S.D.N.Y. Mar. 9, 2005), *recons. denied* 229 F.R.D. 57 (S.D.N.Y. 2005)   Other courts have criticized, banned and invalidated similar communications made without court supervision and prior approval. *See, e.g., Williams.*, 2011 U.S. Dist. LEXIS 75502 at * 8-9 (E.D. Pa. 2011); *Molyneux*, 2011 U.S. Dist. 156173 at * 10-13; *Balasanyan v. Nordstrom, Inc.*, 2012 U.S. Dist. LEXIS 30809 at *14 (S.D. Ca. 2012); *In re School Asbestos Litigation*, 842 F.2d 671, 682 (3d Cir. 1988) (collecting

cases in which defendants "sought to either affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation with or confidence in class counsel). Of course, as in *Williams, Molyneux, Balasanyan*, and the present circumstances, the threat of coercion inherent to unsupervised defendant-putative class communications is made even greater by the fact that employees depend on their employer for their livelihood.[5]

### 3. Defendant Has Waived Its Right To Rely On An Arbitration Provision In This Case

By having failed to enact an arbitration clause before this dispute arose, Amedisys waived its right to rely upon one. The Seventh Circuit has held that a party that litigated a case on the merits for ten months waived any right to raise an arbitration provision as a defense. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. Wis. 1995).[6] As Judge Posner wrote for the court, "an election to proceed before a non-arbitral tribunal for the resolution of a . . . dispute is a presumptive waiver of the right to arbitrate." *Id.* at 390.

Because Amedisys had no arbitration provision in place before this suit was filed, did not plead the existence of an arbitration agreement as a defense to Plaintiffs' claims, and has engaged in litigating this action that has been ongoing for over one year, and because Plaintiffs have already moved for conditional certification and notice, Amedisys should not be permitted to

---

[5] *See also Molyneux*, 2011 U.S. Dist. 156173 at 13; ("Securitas has pushed the potential for coercion to the edge by failing to provide plaintiffs' counsel and this court with notice prior to unilaterally communicating with putative class members regarding their rights in this particular litigation and implementing a self-executing "Class Action Waiver.")

[6] *See also In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); *id.* ("To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather arbitration"); (quoting *Subway Equip. Leasing Corp. v. Forete*, 169 F.3d 324, 329 (5th Cir. 1999)).

rely on an Agreement that seeks to be imposed upon putative class members as a defense at this stage of the proceedings. As a result, the Agreement should be invalidated.

## IV.   CONCLUSION

Although it is understandable that Amedisys would like to limit its potential liability for class-wide wage and hour violations by requiring putative class members to both opt-in to this action and opt-out of its new policy, there is no legitimate explanation for its unilateral efforts to see releases from putative class members at this stage. For the reasons stated above, Plaintiffs respectfully request that this Court enter an order:

1. Prohibiting Defendant from communicating with represented opt-in Plaintiffs and putative class members about the subject matter of this litigation;

2. Invalidating the Agreement with respect to this case;

3. Directing Defendant to provide names, addresses, and telephone numbers of all putative class members who were emailed the Arbitration Agreement and Release;

4. Authorizing Plaintiffs to issue a Court-approved corrective notice at Defendant's expense;

5. Directing Defendant to provide Class Counsel with all materials sent to, or received from, putative class members concerning the Agreement; and

6. Providing any other relief this Court deems necessary or appropriate.

Respectfully submitted this 22nd day of August, 2013:

s/*Gilda A. Hernandez*
Gilda A. Hernandez (NCSB #36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
315 S. Salem Street, Suite 310
Apex, NC 27502
ghernandez@gildahernandezlaw.com
Telephone: 919-741-8693
Facsimile:  919-869-1853

Christine E. Webber (#43968)
Abigail E. Shafroth (#1003646)
**COHEN SELLERS & TOLL, PLLC**
1100 New York Avenue, Suite 500 West
Washington DC, 20005
cwebber@cohenmilstein.com
ashafroth@cohenmilstein.com
Telephone:  202-408-4600
Facsimile:   202-408-4699

.

Richard E. Hayber (CT 11629)
**HAYBER LAW FIRM, LLC**
221 Main Street
Hartford, CT 06106
rhayber@hayberlawfirm.com
Telephone: 860-522-8880
Facsimile:  860-218-9555

*Attorneys for Plaintiffs*

## CERTIFICATION

I hereby certify that on August 22, 2013 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/*Gilda A. Hernandez*____

Gilda A. Hernandez (NCSB #36812)