ORIGINAL 1

1  IN THE UNITED STATES DISTRICT COURT

2  FOR DISTRICT OF CONNECTICUT

3

4  Case No. 3:12 CV01082 (WWE)

5  - - - - - - - - - - - - - - - - - - - - - - - -

6  SCOTT TOMKINS, JOSEPH G. HUSK AND ELIZABETH

7  LEUNG, on behalf of Themselves and all others

8  similarly situated,

9                    Plaintiffs,

10          vs.

11  AMEDISYS, INC.,

12                    Defendant.

13  - - - - - - - - - - - - - - - - - - - - - - - -

14

15                    HEARING

16               August 29, 2013

17

18

19  H e l d   B e f o r e:

20          The Hon. WARREN W. EGINTON,

21               U.S. District Judge

22

23

24

25

```
 1   A p p e a r a n c e s:
 2        For the Plaintiffs:
 3             COHEN MILSTEIN
 4             1100 New York Avenue NW
 5             Suite 500 West
 6             Washington, DC 20005
 7             (202) 408-4600
 8                  By:  CHRISTINE E. WEBBER, ESQ.
 9                       ABBY SHAFROTH, ESQ.
10
11             THE LAW OFFICES OF GILDA A.
12             HERNANDEZ
13             315 South Salem Street, Suite 310
14             Apex, North Carolina 27502
15             (919) 741-8693
16                  By:  GILDA A. HERNANDEZ, ESQ.
17
18
19
20
21
22
23
24
25
```

1    A p p e a r a n c e s (Cont'd.):
2         For the Defendant:
3              LITTLER MENDELSON, P.C.
4              3344 Peachtree Road, N.E.
5              Suite 1500
6              Atlanta, Georgia 30326-4803
7              (404) 233-0330
8                   By:   ANGELO SPINOLA, ESQ.
9                         Aspinola@littler.com
10                        JASON R. STANEVICH, ESQ.
11                        jstanevich@littler.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    THE COURT:  The appearances in
2    this case -- 3:12 CV01082, Scott Tomkins, et
3    al., versus Amedisys.  Represented by
4    Attorney Hernandez and Attorney Webber for
5    the plaintiffs.  And the defendant's
6    represented by Attorney Spinola.
7                    Any other appearances?
8                    MR. STANEVICH:  Attorney Jason
9    Stanevich.
10                   THE COURT:  We have the
11   appearances.
12                   MS. SHAFROTH:  Abby Shafroth.
13                   THE COURT:  I have gone over
14   the papers.  I will give you my tentative
15   ruling and then the defendants can tell me
16   why I am completely wrong.
17                   I have great respect for
18   Harvey Bartle.  Harvey and I have been in a
19   couple of programs together at Princeton,
20   although he is years younger than I am.  He
21   wrote this opinion in Williams, and I really
22   think that the Williams case is really
23   solidly -- it is completely -- it completely
24   overlaps this thing.  There is no variance in
25   it.  It seems to be directly on point with my

1   situation here.  In his case, which is

2   Williams versus Suritest, he issued it on

3   July 13, 2011.

4            In fact, everybody is familiar

5   with the case because it is cited in all the

6   papers that I have.  Of the cases cited, the

7   one most in point here.  What the defendant

8   misses in their arguments is this:  What we

9   are talking about is not the Gulf situation.

10  That is what you start with and take it from

11  there.  Both parties have the complete right

12  to communicate.  This is not a case where

13  there is a claim that only the plaintiffs can

14  communicate and the defendants could not

15  communicate.  That is not what we are looking

16  at here.  We are looking at how the

17  defendants communicate and if they

18  communicate properly without any innuendos

19  that make it really confusing for the people

20  receiving the materials.  That is what I find

21  here in the Williams case also.

22            The main points that I think

23  are brought out by the Plaintiffs in their

24  response, their reply brief, page 4 and 8, I

25  am persuaded by the arguments on page 4 and 8.

1   My reaction, when I read these papers, was
2   that the primary reason that the Court gives
3   in striking down in Williams, especially, we
4   have the issue here.  They should consult the
5   Court because, before they operate question
6   of rights, the Court should control in a
7   class action case what communications are,
8   and that's what Williams is about.  The
9   opt-out situation is what bothers me.  They
10  are very confusing for the employees for
11  opt-out, and if they fail to opt out, he is
12  out of it and perhaps not realizing he is
13  out.  I think there should be affirmative
14  action -- a firm action that we have here
15  now.  That is basically the way I want to go
16  now.
17              On page 8 -- I ought to say,
18  by the way, before I get to page 8, which has
19  the problems set forth, that I agree with on
20  page -- but I did look at Green very
21  carefully.  Green relies heavily on Williams.
22  Green is a case where the test of Gulf is
23  employed by the Magistrate/Judge in that
24  case, and he has to show absolute proof of
25  misleading communications.  I think what I

1    have got here is enough to show me that the
2    order proposed here is not on the intended
3    issue.  I wish to hear from the defense and
4    then the plaintiff.
5                    MR. SPINOLA:  Angelo Spinola
6    for the defense.  I appreciate your candor.
7    I would like to have an opportunity to change
8    your mind.
9                    THE COURT:  You might want to
10   negotiate with what kind of order I should
11   issue here.
12                   MR. SPINOLA:  I will start by
13   saying this:  Based on your comments on what
14   the standard is, we agree -- we don't believe
15   -- we are not arguing that the plaintiff has
16   said we don't get to communicate with the
17   employees at all about the case.  I don't
18   think that anyone is taking that position.
19   Maybe the plaintiffs are.  We are not taking
20   that position.
21                   THE COURT:  Everybody can
22   communicate.
23                   MR. SPINOLA:  The plaintiff
24   has to establish that there is something
25   coercive or misleading about the

1    communications.  I think that release on

2    assault and other cases, at the outset those

3    communications can occur, as long as there is

4    no showing of misleading communications.  The

5    opt-out procedure is, number one, with

6    respect to opting out of the agreement, the

7    ability to opt out is shown in the

8    arbitration program.  There are three

9    documents that relate to the program.  One is

10   the agreement itself, the cover letter that

11   is presented with the agreement, and the

12   frequently asked questions.  All three of

13   those identify what the opt-out procedure is

14   in bold language.  They are in bold language

15   in the case.

16              THE COURT:  But there is no

17   provision for the person to --

18              MR. SPINOLA:  Excuse me.

19              THE COURT:  There is no place

20   for someone to sign something.

21              MR. SPINOLA:  The Third

22   Circuit established that there is no

23   requirement.  That would be the Brown versus

24   Paul case and Electric Boat.

25              THE COURT:  Of course, there,

1   it was pretty clear.

2                    MR. SPINOLA:  As far as

3   clarity, the instructions for opting out,

4   which had been adopted in both agreed dates,

5   you also have other cases and the case that I

6   handled, but we just received an order saying

7   it was the same type of program, the same

8   opt-out procedure, the same communications,

9   where a judge came up with the opposite

10  conclusions, that there's nothing coercive

11  about the procedure.  It was an Arkansas

12  case.

13                   It is similar to what happened

14  here where the plaintiffs issued papers, and

15  the plaintiff made arguments on behalf of

16  individuals stating that the materials were

17  misleading and coercive.  The judge scheduled

18  an emergency hearing.  We submitted our

19  papers.  The judge canceled the hearing and

20  issued an order saying that there is nothing

21  misleading or coercive about the papers.  He

22  said that there are things he may have said

23  differently in the cover letter, but that is

24  not the standard.  It is whether something is

25  said that is misleading or coercive.

1           With the opt-out procedure, we

2   provide instruction on how to provide it.

3   The procedure itself is simply filling out a

4   form that we provided and mailing it.  You

5   have 30 days to be able to do that.  There

6   are roughly 10,000 employees who have

7   accessed and reviewed the materials.  Of

8   those 10,000, approximately 1,000 have opted

9   out.  Clearly, they understand the process.

10  Even the declaration that the plaintiffs

11  submitted in support of their papers

12  demonstrate that those individuals went

13  through the process, and the plaintiffs don't

14  state that in their papers, but those

15  individuals opted out.

16           THE COURT:  This is Mrs. Long?

17           MR. SPINOLA:  No, Mrs. Smith.

18  She provided a declaration in this case in

19  support of plaintiffs' motion.  Notably, in

20  that declaration, she doesn't say anything

21  about being misled or feeling coerced into

22  participation in the arbitration program.

23  The arbitration program is actually

24  identified here.  That is the difference

25  between the Suritest case that you talked

1    about.  In that case, there was a different

2    opt-out procedure where you had to make phone

3    calls.  That would vary according to the

4    Court on page 5, and it was attached to

5    the -- the first thing that the employee sees

6    in our case is the employee to opt out in

7    bold, and then repeatedly and consistently

8    explains to them all of the terms in the

9    documents.  Each one describes the opt-out

10   procedure.  To go a step further, we provided

11   them with a copy of the complaint and the

12   contact information for plaintiffs' counsel.

13   It says we strongly recommend that you

14   consult with an attorney before making this

15   decision about whether arbitration is the

16   right choice for you.  Here is their phone

17   number; here is the complaint; here is the

18   summary of the case.

19                  That is very different from

20   what happened in Suradot.  There are a few

21   cases, and they are referenced without any

22   explanation at all as to what those cases

23   were about or how the employees' ability to

24   participate in those cases would be affected.

25                  THE COURT:  Your argument is

```
 1    that you claim that what Judge Bartle had is
 2    not as specific as what I have before me?
 3                   MR. SPINOLA:  Yes.  We are
 4    aware of the authority.  We worked very
 5    diligently with the company to make sure that
 6    the things identified in the Suradot case and
 7    the other cases were not present with our
 8    program, and our program models the four
 9    cases that says that you can rely on an
10    arbitration agreement when there is a class
11    action case.  Like, when you look at those
12    cases, we went above and beyond what any of
13    the other cases did with respect to the
14    24-hour case, the reliance case.  We did more
15    than any one of those did in their cases to
16    make sure that the employees were fully
17    informed of their rights and could make a
18    knowing and educated decision. We set up a
19    hot line where they could contact us, and
20    frequently asked questions in very clear
21    language to understand exactly what
22    arbitration means.  We gave them the contact
23    for the plaintiffs' lawyers and a copy of the
24    complaint, and how their right could be
25    impacted by choosing to arbitrate.
```

1            As you noted, Your Honor, in

2  the Caldot case, in this jurisdiction, a more

3  can compel arbitration.  We didn't do that

4  here.  We gave them the opportunity to opt

5  out, and we are clear on the process that you

6  would do that, opt out, and that is

7  demonstrated with 1,000 opt-outs.  Somebody

8  is getting it.

9            THE COURT:  Thank you.  That

10 was a very good argument.

11            Who will respond for the

12 plaintiff?

13            MS. WEBBER:  Christine Webber,

14 Your Honor.

15            THE COURT:  All right.  Your

16 position is that it is misleading.  It is too

17 one-sided, and that's why you object to it.

18 You put that forth on page 8.

19            MS. WEBBER:  The terms are

20 misleading, those identified on page 8.  In

21 addition, Your Honor, the one thing which is

22 very important, counsel for the defendant has

23 addressed whether the papers are misleading,

24 but not very one-sided presenting the

25 advantages of arbitration not going into

1    litigation.

2                    THE COURT:  There are some

3    actions that favor class actions, dispute the

4    claim that the class actions are disfavored

5    by the Supreme Court, and there are many

6    cases for the Court to review.

7                    MS. WEBBER:  The Supreme Court

8    said that for a class action to accrue, it is

9    important that there would be timely and

10   accurate notice; in the Second Circuit in the

11   Erhardt (phonetic) case, they say it does not

12   have the objectivity of justice.

13                   THE COURT:  That is what we

14   have in the Williams decision.  The

15   unfairness part.

16                   MS. WEBBER:  While the

17   defendants have tried to distinguish their

18   conduct versus the Suradot cases, we note in

19   the Pomerleau case --

20                   THE COURT:  That relies on

21   Williams.

22                   MS. WEBBER:  Yes.  In that

23   case, the defendants had urged to the end by

24   failing to provide plaintiffs' counsel and

25   the Court with notice prior to giving notice

1    to the class members.

2                  THE COURT:  I am taking the

3    position that the Court should be allowed to

4    supervise a class action case as the

5    courtesies appropriate to do it.

6                  The Court will define what

7    kind of notice will be set out, and it is

8    hard to fashion a notice.

9                  MS. WEBBER:  Exactly.  It's in

10   our brief, we think that the first option is

11   the Court should decide what papers should be

12   going to the class.  We have over 10,000

13   employees here.  We talk about litigation and

14   speak about overtime.  They don't provide

15   enough information to the class members.  We

16   don't represent every employee, only certain

17   categories, and they have other employees who

18   don't fall into the proposed class, so the

19   information provided by the defendants to

20   class members is not enough for them to

21   evaluate whether they should be suing,

22   arbitration or litigation.  Should they go

23   along with the employer, they are assured, to

24   go along with arbitration.

25                  THE COURT:  In the Holmes

1    case, let's see what order I should issue

2    here.  Paragraph 1 is straightforward and

3    would be granted.

4              Paragraph 2, the defense has

5    already objected that it is cutting off the

6    defendants and not the plaintiffs.  It should

7    read that the plaintiffs, regarding this

8    litigation, should proceed without permission

9    from the Court.  There should be something

10   put in there.  The defendant has a right to

11   come back to me and request permission.

12             Number 3 is okay.  Number 4,

13   they don't have it, obviously, if the

14   plaintiff doesn't have it either.

15             As far as notice under

16   paragraph 5, I think counsel should get

17   together on this.  I don't care about the 48

18   hours, especially with the Labor Day Weekend

19   coming up.  But within five working days --

20   we have to be careful about this.  Time in

21   federal court does not exclude weekends and

22   holidays.  This would exclude that, though --

23   submit something which is very brief on what

24   the plaintiffs are supposed to be doing under

25   paragraphs 5 and 6.

1                    I am not going anywhere today
2     or tomorrow, so you can put your heads
3     together and come up with an order.
4     Generally, my position is that there is
5     enough, especially as set forth in the reply
6     brief of the plaintiff at page 8, which is
7     very specific.  There are four parts and very
8     specific.  Counsel have a way to get together
9     on that.
10                    That's all I have.  Does
11    anybody want to add anything else?
12                    MR. SPINOLA:  A point of
13    clarification.  You probably noticed in our
14    brief that we identified that plaintiffs are
15    asking employees to join the case.  I think
16    that is far different from discussing an
17    arbitration program.  Mediation is going on
18    with Plaintiff Leung who submitted in her
19    deposition that she had no thoughts about
20    suing the company, until she got a call from
21    plaintiffs' attorneys, which was unsolicited,
22    without permission from the Court or defense
23    counsel.  On the basis of that communication,
24    she decided to join the case.
25                    My question is this:  Is this

1    supervised notice one that only applies to

2    defendant or to other parties?

3                    THE COURT:  You answered that

4    claim about that particular person and

5    satisfied me by your answers.

6                    Certainly, under Gulf, and

7    Gulf has always been clear from the time it

8    was handed down by the Supreme Court, that

9    fairness applies to both sides, and it ought

10   to be what is sauce for the goose should be

11   sauce for the gander.  I will let counsel

12   work that out.

13                   MS. WEBBER:  Thank you, Your

14   Honor.  We certainly stand by our brief.  I

15   can assure the Court, since we don't have

16   contact information for 99.9 percent of the

17   potential class members, we are talking about

18   people who find out about the case and call

19   us.  We can recommend that we will not make

20   outgoing calls to people who have not

21   contacted us.

22                   THE COURT:  You have to be

23   careful about that.  If you do that, the

24   other side will be coming in here screaming

25   for the court.  Put your heads together and

1   take as much time as you wish.  Thank you.

2                   (Whereupon, a recess was taken

3   from 12 p.m. until 12:45 p.m.)

4                   THE COURT:  All right,

5   Counsel.

6                   MR. SPINOLA:  Angelo Spinola

7   on behalf of the defendant.  I apologize for

8   calling you back here.

9                   THE COURT:  I expected to be

10  called.

11                  MR. SPINOLA:  For some

12  clarification.  I had not received the reply

13  brief this morning.

14                  THE COURT:  You should have

15  told me you didn't have it.

16                  MR. SPINOLA:  I didn't realize

17  what you were referring to.

18                  I was trying to understand it.

19  I missed the specifics of what you ordered.

20                  THE COURT:  That's too bad.  I

21  would have stopped and given you some time to

22  read that.  What I wanted really was for you

23  to work on the page 8 stuff.  Page 4 merely

24  indicated -- you have a copy of that, I

25  assume -- it indicated what the arguments of

1    the plaintiff, what they were.  And how it
2    affected class members' rights, and it was a
3    self-executing agreement that a plaintiff
4    would have to sign.  That was knocked out, no
5    signature required.  I went to page 8 and
6    said those were the items that ought to be
7    considered.  That's where I intended to leave
8    it.
9                    MR. SPINOLA:  The question
10   that I have is this:  I had understood you to
11   be saying that there would be a requirement
12   for corrective notice, but not to validate
13   their ability to join the arbitration.
14                    THE COURT:  Both sides ought
15   to be able to communicate what it is that
16   they propose.  I am not cutting you off on
17   that.
18                    MR. SPINOLA:  That makes more
19   sense, Your Honor.  To clarify, your ruling
20   is that future communications with Amedisys
21   employees, including those participating in
22   this lawsuit, have to be approved by you?
23                    THE COURT:  What it requires
24   is that both sides have an opportunity to
25   communicate.  And a lot of class action cases

1    will bear this out where the court supervises

2    the contents of the notice, and so forth, the

3    attorneys prepare the documents.  And that's

4    all that I am saying here is that both sides

5    should have an opportunity to communicate.

6                    MR. SPINOLA:  All right.

7    Thank you.

8                    MS. WEBBER:  Christine Webber

9    for the plaintiffs.  I want to raise one

10   point of clarification.  My understanding is

11   that while, in the future, employees will be

12   able to choose arbitration, that those who

13   were told that arbitration isn't available

14   unless you decide immediately, the person

15   will have corrective notice and the proper

16   proceedings will proceed and they have full

17   choice.

18                    THE COURT:  Of course.

19                    MR. SPINOLA:  Coming in from

20   Atlanta, and my flight is departing in two

21   hours.  I have not had an opportunity to talk

22   to my client about this.  Is it possible to

23   provide comments for us by tomorrow?

24                    THE COURT:  I will be around

25   all day tomorrow.  You can hold off until the

1   3rd of September.  Keep working together.

2                   Do you know John Walsh?

3                   MR. SPINOLA:  No, I don't.

4                   THE COURT:  He has his own law

5   firm.  We are old buddies.

6                   MR. SPINOLA:  What is his last

7   name?

8                   THE COURT:  Walsh.  W-a-l-s-h.

9   Thank you.

10                  (Whereupon, the above

11  proceedings were adjourned at 12:55 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         CERTIFICATE

2          I hereby certify that the foregoing 22

3     pages are a complete and accurate

4     computer-aided transcription of my original

5     stenotype notes taken of the Hearing in Re:

6     SCOTT TOMKINS, JOSEPH G. HUSK AND ELIZABETH

7     LEUNG, on behalf of Themselves and all others

8     similarly situated, Plaintiffs, versus

9     AMEDISYS, INC., Defendant, which was held

10    before The Hon. WARREN W. EGINTON, U.S.

11    District Judge, at the United States District

12    Court, District of Connecticut, 915 Lafayette

13    Boulevard, Bridgeport, Connecticut on

14    August 29, 2013.

15

16

17

18

19                       _____

20                       Walter Rochow, L.S.R. 004
                         Court Reporter
21                       UNITED REPORTERS, INC.
                         90 Brainard Road, Suite 103
22                       Hartford, Connecticut

23

24

25