UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT TOMKINS, JOSEPH G. HUSK, ELIZABETH LEUNG, JOANN CARTER, and KEVIN SAUTEL on behalf of themselves and others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AMEDISYS, INC.,<br><br>    Defendant. | Case No.:  3:12-cv-01082 (WWE) |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Plaintiffs Scott Tomkins, Joseph G. Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel ("Plaintiffs") are former home health care clinicians employed by the Defendant, Amedisys, Inc. They allege that the Defendant failed to pay them and certain similarly situated individuals at a rate of time and one-half for hours worked over forty hours per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 33.100, *et seq.*, and the Kentucky Wage And Hour Act ("KWHA") Ky. Rev. Stat. Ann. § 337.020, *et seq*. *See* Second Amended Complaint ¶ 1, Dkt. No. 243.   In particular, Plaintiffs allege that Defendant's "per visit" method of compensation does not constitute a salary or fee based system of compensation under the FLSA, Pennsylvania or Kentucky law for purposes of treating such individuals as "exempt" from overtime, and did not provide them with appropriate overtime compensation for all hours worked over 40 in a workweek. *Id.* at ¶¶ 2–5.  Plaintiffs sought unpaid overtime wages,

1

attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. *Id*.

The parties engaged in significant discovery and motion practice. While full, class-wide merits discovery has not yet begun, the parties engaged in substantial discovery prior to the ruling on conditional certification. As part of that discovery, Defendant produced relevant policy documents and training materials, as well as personnel files and data for the three initial class representatives. The first three class representatives produced documents as well, and sat for deposition. *See* Dkts. 257; 259; and 265.

In February of 2015, the parties jointly moved to stay the instant proceedings in order to pursue mediation; the Court granted this motion. Dkt. Nos. 249, 250. The parties signed an agreement to mediate on March 31, 2015, the terms of which also required Defendant to turn over time and payroll data for all individuals who had submitted written consents to participate in Plaintiffs' conditionally certified FLSA collective action claim, so Plaintiffs could conduct a data analysis and calculate possible damages. The parties subsequently employed Hunter Hughes, an attorney with extensive experience in mediation of complex wage and hour actions, as a neutral third-party mediator to assist them in their attempt to reach a settlement. As a direct result of the negotiations mediated by Mr. Hughes on June 10, 2015, the parties reached an agreement in principle. After further negotiation, the parties reached the Settlement Agreement on July 28, 2015.

On September 24, 2015, this Court entered an Order preliminarily approving the settlement on behalf of the classes set forth therein (the "Settlement Classes" or the "Settlement Class Members"), provisionally certifying the state-law settlement class under Federal Rule of Civil Procedure 23, appointing Cohen Milstein Sellers & Toll, PLLC, The Law Offices of Gilda A. Hernandez, PLLC, and The Hayber Law Firm, LLP, as Class Counsel, and authorizing notice of the settlement to all Settlement Class Members. Dkt. 267.

On October 23, 2015, the Court-appointed settlement administrator sent Court-approved notices to all Settlement Class Members informing them of their rights under the settlement, including the right to object, the right to request exclusion from the settlement if they were a putative member of either of the state law classes provisionally certified under Federal Rule of Civil Procedure 23, and of Class Counsel's intention to seek up to a one-third of the settlement fund for attorneys' fees, and their reimbursement of taxable costs. *See* Dkts. 259; 261; 265; and 265-1.  Plaintiffs filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). *Id*; *see also* Dkts. 263-264.  Consistent with the parties' settlement agreement, Defendant did not oppose either of these motions and did not object to Plaintiffs' requests for attorneys' fees, costs, or service payments.[1]  No Settlement Class Member has objected to the settlement, and only seven (7) have elected to request exclusion from the settlement. *See* Dkt. 276, Borges Decl. ¶ 9.[2]

On January 20, 2016, Plaintiffs filed an Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  The Court held a fairness hearing on January 26, 2016.  No Class Member appeared or objected to the settlement at the fairness hearing.

Having considered the Plaintiffs' unopposed Motion for Final Approval, their unopposed

---

[1] On September 23, 2015, Defendant filed a Response to Plaintiffs' Unopposed Motion for Attorneys' Fees, stating that while it did not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement, it did not concede that the hourly rates identified by Class Counsel, in connection with the request were reasonable. As such, Defendant submitted a response to clarify that, while it agreed with Class Counsel's request for an award of attorneys' fees consistent with the parties' proposed settlement agreement, that it should not be construed as a concession by Defendant that the hourly rates presented by Class Counsel were appropriate.

[2] *See* Declaration of Ricky Borges, Epiq Class Action & Claims Solutions, Inc. ("Epiq's") Project Manager, (hereinafter, "Borges Decl.")

Motion for Attorneys' Fees and Reimbursement of Taxable Costs, their unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the January 26, 2016 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the January 26, 2016 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court finally certifies the following classes under Federal Rule of Civil Procedure 23(e) for purposes of the instant settlement in this action only ("Rule 23 Settlement Classes")[3]:

> (ii.) Full-time Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Language Therapists, or similar positions, in Defendant's home health division, who were paid on a "per-visit" basis, and who were employed by Defendant in the Commonwealth of Pennsylvania between July 25, 2009 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement, but excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of employment, agreed to be subject to Amedisys's Dispute Resolution Agreement at the time of hire (which requires individuals to submit most employment-related disputes to mandatory arbitration); or

> (iii.) Full-time Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Language Therapists, or similar positions, in Defendant's home health division, who were paid on a "per-visit" basis, and who were, employed by Defendant in the Commonwealth of Kentucky between February 28, 2010 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement, but excluding any such individual who was employed by Defendant in 2013, at the time Defendant initially rolled out its Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration), and who did not timely opt out of that arbitration program or who did not timely submit a written consent form requesting to participate as a party plaintiff in Plaintiffs' claims under the federal FLSA, and excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of

---

[3] The instant settlement also includes "Opt-in Plaintiffs," which the parties' settlement agreement defines as "any individual who, pursuant to 29 U.S.C. § 216(b), filed a written consent with the U.S. District Court for the District of Connecticut in the [this case], asking to participate in Plaintiffs' claims under the FLSA as a party plaintiff." *See* 257-1, § II(A)(10).

employment, agreed to be subject to the Dispute Resolution Agreement at the time of hire.

*See* Dkt.257-1, § II(A)(21).

2.  The Rule 23 Settlement Classes meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of the instant settlement.

3.  The Rule 23 Settlement Classes satisfy Federal Rule of Civil Procedure 23(a)(l) because there are approximately 40 or more Class Members in each of the Rule 23 Classes and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members").

4.  The Rule 23 Settlement Classes satisfy Federal Rule of Civil Procedure 23(a)(2) for purposes of the instant settlement, because they share common questions of fact and law with other class members, including (i) whether Defendant's "per visit" payment system violates the FLSA and state wage and hour laws when clinicians were classified as exempt; and (ii) following reclassification, whether Defendant systematically discouraged employees from reporting all hours worked, and calculated overtime payments incorrectly. *See Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Alli v. Boston Mkt. Corp.*, 2011 U.S. Dist. LEXIS 143303 at *6 (D. Conn. Dec. 8, 2011) (common questions included whether "class members were properly classified as exempt from overtime requirements"); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036 at *14-15 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a

5

workweek; and whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

    5.       The Rule 23 Settlement Classes satisfy Federal Rule of Civil Procedure 23(a)(3) for purposes of the instant settlement, because the named Plaintiffs' claims for overtime pay are based on the same factual and legal allegations that form the bases of the putative class members' claims. *See Hernandez v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 165771 at *9 (S.D.N.Y. Nov. 15, 2012) (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris,* 859 F. Supp. 2d at 616 (same); *Alli,* 2011 U.S. Dist. LEXIS 143303 at *2 (typicality satisfied where "each state law class representative raises the same claims as the class members of the particular state law class that he or she seeks to represent").

    6.       The Rule 23 Settlement Classes satisfy Federal Rule of Civil Procedure 23(a)(4) for purposes of the instant settlement, because there is no evidence that the named Plaintiffs' and Class Members' interests are at odds. *See Morris,* 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds); *Alli*, 2011 U.S. Dist. LEXIS 143303 at *2 (no evidence of any named plaintiff interests antagonistic to those of class members).

    7.       In addition, Class Counsel, Cohen Milstein Sellers, & Toll, PLLC ("CMST"), The Law Offices of Gilda A. Hernandez, PLLC ("GAH"), and The Hayber Law Firm, LLC ("HLF"), are all experienced employment law practitioners and meet Rule 23(a)(4)'s adequacy requirement. *See In re Tyson Foods FLSA MDL*, (No. 07-md-1854, M.D. Ga) (Ms. Webber served as lead counsel in *In re Tyson Foods*, a settled collective action involving FLSA claims of 17,000 workers at over 40 Tyson chicken processing plants); *Alfaro Zelaya, v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, 2015 U.S. Dist. LEXIS 130225 (E.D.N.C. Sept. 28, 2015)

("Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina . . . Gilda A. Hernandez [is] appointed as [C]lass [C]ounsel."); *Aros v United Rentals, Inc.,* 2012 U.S. Dist. LEXIS 104429 at *20 (D. Conn. July 26, 2012) (finding HLF to be "experienced employment lawyers with good reputations among the employment law bar");

8.  The Rule 23 Settlement Classes also satisfy Rule 23(b)(3). In the context of the parties' proposed settlement, common factual allegations and a common legal theory predominate over any factual or legal variations among class members. *See Hernandez,* 2012 U.S. Dist. LEXIS 165771 at *4 (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Alli,* 2011 U.S. Dist. LEXIS 143303, at *2 (same);.

9.  Class adjudication of this case through the parties' proposed settlement is superior to individual adjudication, because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013); *Morris,* 859 F. Supp. 2d at 617.

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants Plaintiffs' unopposed motion for final approval and finally approves the settlement as set forth in the parties' Stipulation and Settlement Agreement, Dkt. No. 257-1 (the "Settlement Agreement").

11. Rule 23(e) requires court approval for class action settlements to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa USA. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato*

7

*v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores,* 396 F.3d at 1 16 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.,* 2005 U.S. Dist. LEXIS 10848 at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores,* 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.,* No. 05 Civ. I 0240, 2007 U.S. Dist. LEXIS 57918 at *12 (S.D.N.Y. July 27, 2007)

**Procedural Fairness**

14. The proposed settlement is procedurally fair, because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Alli,* 2011 U.S. Dist. LEXIS 143303 at *2 (finding settlement to be "fair, reasonable, and adequate in all respects" and "the result of arms-length negotiations between experienced counsel representing the interests of the Plaintiffs and Defendant, after thorough factual and legal investigation"); *see also Toure v. Amerigroup Corp.,* 2012 U.S. Dist. LEXIS 110300 at *7 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable,

8

adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); *Diaz v. Eastern Locating Serv., Inc.,* 2010 U.S. Dist. LEXIS 139136 at *10 (S.D.N.Y. Nov. 29, 2010)

15. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial discovery and motion practice, and reached a settlement after a mediation between the parties. *See* Dkts. 257; 259; and 265.

16. On June 9, 2015, the parties participated in a full-day mediation session in Atlanta, conducted by an experienced class action mediator, Hunter Hughes. At the mediation, the parties came to an agreement in principle, and over the next several months, the parties negotiated the remaining terms of the Settlement Agreement. *Id.* These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores,* 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 U.S. Dist. LEXIS 18913 at *10-11 (S.D.N.Y. Mar. 2, 2010).

**Substantive Fairness**

17. The settlement is substantively fair. All of the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d. Cir. 1974), *abrogated on other grounds by Goldberger.*, 209 F.3d 43, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . *Grinnell Corp.*, 495 F.2d at 463.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notices sent to all Settlement Class Members included an explanation of the allocation formula that would be used to determine their individual share of the settlement. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the Settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and only seven (7) have requested exclusion. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See In re Sturm, Luger, & Co., Sec. Litig.,* 2012 U.S. Dist. LEXIS 116930 at *14 (D. Conn. Aug. 20, 2012) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement.") (quoting *Ross v. A.H Robins,* 700 F. Supp. 682, 684 (S.D.N.Y. 1988)).

21. The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). The parties completed extensive discovery. The parties exchanged substantial quantities of documents, and Defendant deposed the Named Plaintiffs. Thus, the third *Grinnell* factor weighs in favor of final approval.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P 'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N .Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a

trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 22, 2007). Here, a trial on the merits would involve significant risks for Plaintiffs. The Plaintiffs will have to overcome probable attempts to decertify the FLSA collective action and opposition to certification of the Rule 23 Classes. As other cases predicated on similar theories of liability suggest, this is hardly an idle threat. *Rindfleisch v. Gentiva Health Serv., Inc.*, 22 F. Supp. 3d 1295 (N.D. Ga. 2014). Moreover, the Plaintiffs would still have to overcome Defendant's arguments that their system of payment complied with the FLSA, and Defendant's arguments that Plaintiffs have overestimated the damages suffered as a result of Defendant's failure to pay overtime. The fourth and fifth *Grinnell* factors therefore weigh in favor of final approval.

23. As discussed in the previous section, the Court had not yet granted certification of the state-law classes in this case pursuant to Federal Rule of Civil Procedure 23 prior to settlement, and the grant of preliminary certification of the FLSA collective action, which was decided based on a limited evidentiary record, and subject to a lower standard of proof, is always subject to an attempted reversal. Again, other cases predicated on similar theories demonstrate the potential risk of decertification/non-certification here. *See Rindfleisch v. Gentiva Health Serv., Inc.*, 22 F. Supp. 3d 1295 (N.D. Ga. 2014). Settlement eliminates that risk for Plaintiffs, as well as the expense and delay inherent in the litigation process. The sixth *Grinnell* factor, thus, weighs in favor of final approval.

24. There is no evidence here as to whether or not the Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)

(quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000)). Thus, given that all of the other Grin*nell* Factors weigh in favor of the proposed settlement, this factor should not be an obstacle to final approval.

25. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank,* 228 F.R.D. at 186 (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). The eighth and ninth *Grinnell* factors weigh in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

26. The Court hereby approves the FLSA settlement.

27. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989); *see also McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

28. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the

fairness of the settlement.  *Lynn's Food Stores,* 679 F.2d at 1353-54.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Id* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15.

29. In this case, the settlement was the result of a formal mediation involving vigorous arm's-length settlement negotiations.  *See* Dkts. 257; 265. During the entire process, Plaintiffs and Defendant were represented by counsel experienced in wage and hour law.  Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

30. Pursuant to its order provisionally certifying the Rule 23 Settlement Class and preliminarily approving the parties' settlement, Dkt. No. 267, all putative Rule 23 Settlement Class Members, along with all Opt-in Plaintiffs, were sent Court-approved notices by first-class mail at his or her last known address.  The Court finds that the Notices fairly and adequately advised Settlement Class Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on January 26, 2016.  Settlement Class Members were provided with the best notice practicable under the circumstances.

31. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

## AWARD OF FEES AND TAXABLE COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

32. On September 24, 2015, the Court appointed Cohen Milstein Sellers & Toll, PLLC, The Law Offices of Gilda A. Hernandez, PLLC, and The Hayber Law Firm, as Class Counsel, because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

33. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $2,666.666.67, which is one-third of the Gross Settlement Amount.

34. Class Counsel's request for one-third of the Gross Settlement Amount is reasonable and "consistent with the norms of class litigation in this circuit." *Aros,* 2012 U.S. Dist. LEXIS 104429 at *18.

35. In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing Co. v. Van Gernert, et al.,* 444 U.S. 472, 481-82 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007); *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co.,* 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund); *see also Aros,* 2012 U.S. Dist. LEXIS 104429 at * 6.

36. No Class Member objected to Class Counsel 's request for one-third of the fund, which also provides support for Class Counsel 's fee request.

37. The Court also awards Class Counsel reimbursement of their taxable costs of $36,701.80.

38. The attorneys' fees and the amount in reimbursement of taxable costs and expenses shall be paid from the Gross Settlement Fund in accordance with the Settlement Agreement.

39. The Court finds reasonable service awards for Named Plaintiff Scott Tomkins, Joseph Husk, and Elizabeth Leung, in the amount of $10,500; and $6,250.00 for Plaintiffs Joann Carter, and Kevin Sautel.  These amounts shall be paid from the Gross Settlement Fund in

accordance with the Settlement Agreement.

40. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved in favor of final approval. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## SETTLEMENT ADMINISTRATOR

41. The Court confirms its prior Order appointing Epiq Class Action & Mass Tort Solutions, Inc. ("Epiq") as the Settlement Administrator in this case, Dkt. No. 267, and the duties Epiq was previously ordered to perform therein in conjunction with any order grating final approval to the Settlement in this action.

42. Consistent with the Court's prior Order appointing Epiq as Settlement Administrator, Epiq shall determine the total amount of its owns services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts form the Qualified Settlement Fund it established in connection with this Settlement.

43. Within seven (7) calendar days after the Effective Date of the Settlement Agreement, Defendant shall deposit the Gross Settlement Amount ($8,000,000, less the $10,000 which Defendant previously paid to Hunter Hughes on behalf of all parties for his services in connection with the mediation in this action) in a Qualified Settlement Fund account to be established by Epiq.

44. Within five (5) calendar days after the Gross Settlement Amount is deposited into the Qualified Settlement Fund, the Settlement Administrator shall distribute the funds in the fund by making the following payments in the order below:

- Paying Class Counsel one-third of the Gross Settlement Amount

      ($2,666,666.67);

- Reimbursing Class Counsel for $36,701.80 in taxable litigation costs;

- Paying service awards to Named Plaintiffs, Scott Tomkins, Joseph Husk, and Elizabeth Leung in the amount of $10,500 respectively; and for Named Plaintiffs Joann Carter and Kevin Sautel, in the amount of $6,250 respectively; and

- Paying the remainder of the fund (less the amounts set aside for payment of Epiq's own fees) to Settlement Class Members who timely returned the required claim and/or tax forms in accordance with the allocation plan described in the brief in support of preliminary approval of the settlement. Specifically, such individuals will receive a proportionate share of the remainder of the fund based on Class Counsel's estimate of their damages compared to all other Settlement Class Members. For Opt-in Plaintiffs, Class Counsel created damage estimates by taking recorded time spent in visits and performing non-visit compensable work, and then adding estimates of travel time based on recorded mileage and estimates of additional charting time, varying by type of visit. From the resulting estimates of total hours worked, and data concerning total earnings paid to the Opt-in Plaintiff for the week, Class Counsel calculated a regular rate and estimated overtime earned on a half-time basis. Class Counsel then subtracted any overtime actually paid by Amedisys to create an estimate of overtime they claim was unpaid. Because individual timekeeping and payroll data was not provided for Rule 23 class members, Class Counsel estimated their alleged damages based on the number of weeks each worked during the covered period, and Class Counsel's calculations of the average estimated unpaid overtime for Opt-in Plaintiffs in the same state and position

45.    Settlement payments shall be made to each Opt-in Plainitff who Epiq determines correctly and timely submitted an I.R.S. Form W-4 and an I.R.S. Form W-9, as required by the Settlement Agreement and the Court's order granting preliminary approval to the Settlement Agreement, Dkt. No. 267.

46.    Settlement payments shall be made to each member of the Rule 23 Settlement Class who Epiq determines correctly and timely submitted a Court-approved claim form, an

I.R.S. Form W-4, and an I.R.S. Form W-9, as required by the Settlement Agreement and the Court's order granting preliminary approval to the Settlement Agreement, Dkt. No. 267.

47. As previously ordered by the Court on September 24, 2015, Dkt. No. 267, after making all Court-ordered payments form the Qualified Settlement Fund, Epiq shall return any unclaimed portion of the Qualified Settlement Fund to Defendant, including the amounts associated with any members of the Settlement Class who requested exclusion form the settlement or who did not timely submit the required tax and/or claim forms in order to receive a settlement payment, as well as any amounts associated with settlement checks that are not negotiated within the applicable 90-days window spelled out in the Settlement Agreement and the Court's prior order. *See* Dkt. No. 267; Dkt. No. 267-1 (¶¶ II.K, II.P.2.).

48. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who did not timely exclude themselves from the settlement, all Opt-in Plaintiffs, and the Named Plaintiffs shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement. Specifically, as stated in the Settlement Agreement, this means:

- "Effective as of the Effective Date, each and every Named Plaintiff hereby forever completely settles, compromises, releases, and discharges Defendant from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Named Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reason of the negotiations leading to this Agreement, except to the extent that any such claim may not be waived as a matter of law;"(Dkt. No. 257-1 (¶ II.I.1)) and

- "Each and every Settlement Class Member [which includes all Rule 23

> Settlement Class Members who did not timely request exclusion and all Opt-in Plaintiffs] hereby forever completely settles, compromises, releases, and discharges Defendant from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law." (Dkt. No. 257-1 (¶ II.I.1).)

49. As further explained by the Settlement Agreement, the claims released by both Named Plaintiffs and the Settlement Class Members "specifically include without limitation (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under Pennsylvania state law, including but not limited to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 330.101, *et seq.*, and Pennsylvania Wage Payment Collection Law, 42 Pa. Stat. Ann. § 330.101, *et seq.*, and any and all claims under Kentucky state law, including but not limited to Kentucky's Wage and Hour Act, KRS Ch. 337; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received *in assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement

Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations." (Dkt. No. 257-1 (¶ II.I.1).)

50. Pursuant to the Settlement Agreement, the Named Plaintiffs, all Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant, and are enjoined from pursuing any claim released as part of this settlement. Dkt. No. 257-1 (¶ II.I.2).

51. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of _____, 2016.

                                                                                                                                         _____
                                                                                                                                         Honorable Warren W. Egington
                                                                                                                                         Senior United States District Judge