## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SCOTT TOMKINS, JOSEPH G. HUSK, and ELIZABETH LEUNG, on behalf of themselves and others similarly situated,** | : | |
| | : | |
| | : | |
| | : | Civil Action No.:  3:12-CV-01082 (WWE) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **AMEDISYS, INC.,** | : | |
| | : | July 29, 2015 |
| Defendant. | : | |
| | : | |
| | : | |

## STIPULATION AND SETTLEMENT AGREEMENT

Named Plaintiffs Scott Tomkins, Joseph G. Husk, and Elizabeth Leung, along with proposed named plaintiffs Joann Carter and Kevin Sautel, individually and on behalf of all Opt-in Plaintiffs and all members of the Settlement Classes defined herein, and their counsel of record, and defendant Amedisys, Inc., and its counsel of record, and subject to the terms and conditions hereof and final approval by the Court, hereby enter into this stipulation of settlement ("Agreement"). This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant action shall be dismissed with prejudice upon final approval of this settlement by the Court.

I.     **RECITALS AND BACKGROUND**

   A.     **The Nature of the Instant Action and Claims Raised**

Defendant Amedisys, Inc. works with hospitals and physicians across the country to provide post-acute care to individuals who are recovering and rehabilitating from an operation or injury, or who are managing a chronic disease. The company's Home Health Division employs thousands of clinicians in several specialties, including as Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Language Pathologists, to provide this care to patients in their homes.

Plaintiffs Scott Tomkins, Joseph G. Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel worked as clinicians in Defendant's Home Health Division. They assert claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the Commonwealths of Pennsylvania and Kentucky. *See* Penn. Min. Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.100, *et seq.*; Ky. Wage & Hour Act ("KWHA"), Ky. Rev. Stat. Ann. § 337.020, *et seq.* Those claims include allegations that Defendant treated them, and other similarly situated clinicians, as exempt from federal and state overtime requirements, but paid such individuals using a

2

"per-visit" compensation model that did not comply with applicable fee-basis and salary-basis regulations for exempt employees. Plaintiffs further argue that when Amedisys treated them and other per-visit clinicians as "non-exempt" and overtime eligible, it required them to work off-the-clock and/or did not use the appropriate methodology for computing their overtime pay, thus, denying them full pay for all hours worked, including overtime. On these grounds, Plaintiffs seek to recover on their own behalf, as well as on behalf of a class of allegedly similarly situated individuals who filed consents to participate in this action as party plaintiffs, and putative classes of clinicians in Pennsylvania and Kentucky, unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

**B.     Procedural History of the Instant Action**

1.      On July 25, 2012, Julie Cook, Scott Tomkins, and Joseph Husk filed a complaint in the U.S. District Court for the District of Connecticut, raising putative collective-action claims under the FLSA and putative class-action claims Pennsylvania state law. (Dkt. No. 1.)

2.      On September 24, 2012, Plaintiffs filed a motion requesting conditional certification of their FLSA claims as a collective action and authorization to send court-supervised notice to potential participants in that collective action. (Dkt. No. 29.) That same day, Defendant filed a motion to transfer venue to the U.S. District Court for the Middle District of Louisiana (Dkt. No. 30), and a motion to dismiss Plaintiffs' complaint for failure to state a claim, or, in the alternative, for a more definite statement (Dkt. No. 32). Plaintiffs' motion for conditional certification was stayed pending resolution of the Defendant's motions. (Dkt. No. 49.) On April 8, 2013, the Court denied Defendant's motions for transfer of venue and for dismissal. (Dkt. No. 56.) However, the Court further ordered that, prior to responding to Plaintiffs' motion for conditional certification, Defendant was permitted to conduct limited

3

discovery concerning that issue, including depositions of the three Named Plaintiffs at that time (Cook, Tomkins, and Husk), and an exchange of documents and time and payroll data in advance of those depositions. (Dkt. Nos. 59, 71-72, 86, 90.)

3.      The parties exchange the court-authorized written discovery, documents, and data, and conducted depositions of Plaintiffs Tomkins and Husk in June 2013.  Plaintiff Cook, however, chose to withdraw from the action following the noticing of her deposition. (Dkt. No. 94.)  As a result, Plaintiffs moved the Court for leave to amend their complaint to add a new Named Plaintiff, Elizabeth Leung, which the Court granted.  (Dkt. Nos. 91, 93, 95.) Additionally, based on the change in Named Plaintiffs, the Court denied Plaintiffs' motion for conditional certification without prejudice to re-file such a motion (Dkt. No. 96), which Plaintiffs did on July 10, 2013 (Dkt. No. 97).  Following the filing of Plaintiffs' amended complaint, the parties also supplemented their prior discovery responses to produce information, documents, and materials related to Ms. Leung, and she subsequently sat for deposition in July 2013.

4.      On August 22, 2013, Plaintiffs filed an emergency motion for protective order related to Defendant's implementation of a company-wide mandatory arbitration program. Plaintiffs requested that the Court issue corrective notice to putative collective-action and class-action class members who were employed by Defendant at the time of that implementation, informing them that, notwithstanding any failure to timely opt-out of Defendant's arbitration program, they could still participate in the instant action. (Dkt. No. 106.)

5.      Following extensive briefing (Dkt. Nos. 97, 101, 104, 106, 110, 111, 114, 117, 136, 147, 138, 139, 141, 147) and multiple hearings on Plaintiffs' motions for conditional certification and for protective order, on January 13, 2014, those motions were granted.  (Dkt. Nos. 149 & 150.)  After subsequent briefing regarding the form of notice, on April 17, 2014, all

4

individuals who had worked in Defendant's Home Health Division as a full-time, "per-visit" Registered Nurse, Physical Therapists, Occupational Therapist, or Speech Language Pathologist, any time during the prior three years, accounting for Court-ordered equitable tolling, were issued notice by a neutral third-party notice administrator. 1,571 individuals submitted written consents to participate in this action as party plaintiffs.

6.      On September 10, 2014, Plaintiffs filed a motion for leave to file a second amended complaint to add putative class-action claims under Kentucky state law, based on similar allegations as their FLSA and Pennsylvania state-law claims. (Dkt. No. 214.)  As part of that motion, Plaintiffs also requested that Joann Carter and Kevin Sautel, who had previously filed written consents to participate in Plaintiffs' FLSA claims, be added as Named Plaintiffs and potential class representatives for their proposed Kentucky state-law claim.  On December 12, 2014, the Court granted Plaintiffs' leave to file a second amended complaint.  (Dkt. No. 243.) Plaintiffs have not yet filed a second amended complaint.

7.      Following the close of the period for individuals to opt in to Plaintiffs' putative FLSA collective-action, on July 31, 2014, the parties met and conferred regarding the scope of liability discovery, including "opt-in" discovery.   The parties submitted their respective proposals to the Court on August 14, 2014, and requested oral argument on the same.  (Dkt. No. 203.)  Over the next several months, the parties filed multiple submissions in support of their respective positions concerning the scope and timing of liability discovery, and the Court held two hearings on the subject.  (Dkt. Nos. 208, 218, 231, 232, 236, 237, 241, 242.)  Consistent with the Court's instructions and oral rulings during those hearings, the parties submitted a supplemental Rule 26(f) Report on December 22, 2014.  (Dkt. No. 244.)  Based on that report, on January 21, 2015, the Court entered an order approving a liability discovery plan.  (Dkt. No.

245.)  Pursuant to that order, the parties were permitted to engage in class-wide discovery, which included propounding written discovery on all Opt-in Plaintiffs and on Defendant with respect to the care-center locations where those Opt-in Plaintiffs had worked, as well as depositions of 10 percent of the Opt-in Plaintiffs and a commensurate number of care-center management depositions.

8.      On February 23, 2015, prior to the start of the liability discovery period, the parties filed a joint motion to stay proceedings for six months (until August 24, 2015) to pursue the potential for a mediated settlement.  (Dkt. No. 249.)  The Court granted the motion to stay on February 24, 2015.  (Dkt. No. 250.)

9.      During the stay of the Litigation, the parties exchanged time and payroll data for all Opt-in Plaintiffs, as well as employment data for putative members of Plaintiffs' Pennsylvania and Kentucky state law classes.  Then, following an exchange of confidential position statements, on June 10, 2015, the parties engaged in an all-day mediation in Atlanta, Georgia with neutral third-party mediator, Mr. Hunter Hughes.  As a result of that mediation, the parties reached a mutually agreeable settlement of the Litigation, as explained herein.

### C.      Parties' Statements and Recognition of the Benefits of Settlement

#### 1.      Plaintiffs' statement

Plaintiffs believe the claims asserted in the Litigation have merit under the FLSA and Pennsylvania and Kentucky law.  However, Plaintiffs recognize the cost and delay of continued proceedings necessary to prosecute the instant action against Defendant through discovery, dispositive motions, trial, and appeal.  Plaintiffs have also taken into account the uncertain outcome and the risk of loss in any litigation, especially in a complex collective/class-action such as this.  Plaintiffs believe that the settlement set forth in this Agreement confers substantial

benefits on Settlement Class Members.  Based on their evaluation, Plaintiffs have determined that the settlement is in the best interest of Named Plaintiffs, the Opt-in Plaintiffs, and the other members of the Settlement Classes.

## 2.     Defendant's statement

Defendant denies each and all of the claims alleged by Plaintiffs in the Litigation, including the claims in their proposed second amended complaint.  Defendant expressly denies any and all charges of wrongdoing or liability alleged in the instant action.  To the contrary, Defendant contends that, in compliance with applicable state and federal laws, its per-visit clinicians have been paid all wages due.  Because Defendant has complied with its obligations under the FLSA and state law, Defendant believes Plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail.  Defendant also denies that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for purposes of settlement.  Nevertheless, Defendant has taken into account the uncertainty and risks inherent in any litigation and the fact that the conduct of the Litigation would be protracted and expensive.  Defendant, therefore, has determined it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

## II.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (for themselves and the Settlement Classes defined below) and Defendant, by and through their respective attorneys, that, subject to the approval of the Court, the instant action will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice, subject to the terms and conditions of this Agreement, as follows:

2026427.1

### A.    Definitions

As used throughout this Agreement, the following terms have the meanings specified below:

1.     **"Authorized Claimant"** means any Settlement Class Member who is entitled to a Settlement Payment, as defined herein, if he or she timely submits the required tax forms and/or submits a required claim form, as described herein in Parts II.H, II.J.3 and II.K, *infra*.

2.     **"Defendant"** means Amedisys, Inc., including its past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations.

3.     **"Effective Date"** means the date by which both of the following have occurred:  (i) this settlement has received final approval from the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over this Litigation, as defined herein; and (ii) the period for appealing the Court's final order approving the settlement expires without an appeal being filed or, if such an appeal is filed, the date on which the appeal is finally resolved, including any decision by the United States Supreme Court.  To the extent any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety.

4.     **"Final Settlement Hearing"** means the hearing to be conducted by the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over the

Litigation, as defined herein, to determine whether to finally approve the settlement explained herein.

5.      **"Gross Settlement Amount"** refers to $8,000,000, less the $10,000.00 which Defendant has paid to mediator Hunter R. Hughes for his services in connection with the parties June 10, 2015, mediation, which is the total and maximum amount Defendant will be required to pay under this settlement to completely resolve and settle the claims against Defendant in the Litigation, except that in addition to the Gross Settlement Amount, Defendant will pay its share of employer payroll taxes associated with payments to Authorized Claimants pursuant to this Agreement that are attributable to back wages.  The Gross Settlement Amount expressly includes, but is not necessarily limited to, the following elements:  (i) cash Settlement Payments to Authorized Claimants, as described in this Agreement; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorney's Fees, payable as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

6.      **"Litigation"** refers to the civil action filed on July 25, 2012, in the U.S. District Court for the District of Connecticut, which was previously styled *Cook, et al. v. Amedisys, Inc.*, No. 3:12-CV-01082 (WWE), and is currently styled as *Tomkins, et al. v. Amedisys, Inc.*, No. 3:12-CV-01082 (WWE).

7.      **"Motion for Preliminary Approval"** refers to the motion for preliminary approval of this settlement and its supporting papers.

8.      **"Named Plaintiffs"** mean Scott Tomkins, Joseph G. Husk, and Elizabeth Leung.

9.      **"Notice of Settlement"** refers to the official notice of settlement of class action and final fairness hearing, substantially in the forms attached hereto as Exhibit 1.

10.   **"Opt-in Plaintiff"** means any individual who, pursuant to 29 U.S.C. § 216(b), filed a written consent with the U.S. District Court for the District of Connecticut in the Litigation, asking to participate in Plaintiffs' claims under the FLSA as a party plaintiff.

11.   **"Order Granting Preliminary Approval"** refers to the order or statement of decision in the Litigation granting preliminary approval to this settlement.

12.   **"Per-visit Clinicians"** means a current or former employee of Defendant, who worked as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in Defendant's home health division, and who was paid on a "per-visit" basis.

13.   **"Plaintiffs"** means Scott Tomkins, Joseph G. Husk, and Elizabeth Leung, along with proposed named plaintiffs Joann Carter and Kevin Sautel, individually and on behalf of all Opt-in Plaintiffs defined herein, and all members of the Settlement Classes defined herein, their counsel of record, and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

14.   **"Plaintiffs' Attorney's Fees"** refers to the fee amount to be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over the Litigation, which shall not exceed one third of the Gross Settlement Amount.

15.   **"Plaintiffs' Attorneys"** means the attorneys representing Plaintiffs in the Litigation:  (i) The Law Offices of Gilda A. Hernandez, PLLC, 315 S. Salem Street, Suite 310, Apex, North Carolina 27502; (ii) Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, Suite 500 West, Washington, District of Columbia 20005; and (iii) The Hayber Law Firm, LLC, 221 Main Street, Hartford, Connecticut 06106.

16.    **"Plaintiffs' Litigation Expenses"** means the litigation costs and expenses, incurred by Plaintiffs in connection with the Litigation, and taxable pursuant to 29 U.S.C. § 1920, not to exceed $112,000, which shall be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over the Litigation.

17.    **"Revised Gross Settlement Amount"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Authorized Claimants, as described in Parts II.G and II.P.2, *infra*.  The Revised Gross Settlement Amount is equal to Gross Settlement Amount less:  (i) Service Awards, as described herein; (ii) Plaintiffs' Attorney's Fees, as described herein; (iii) Plaintiffs' Litigation Expenses, as described herein; and (iv) Settlement Expenses, as defined herein.

18.    **"Service Award"** means a sum, as explained in Parts II.D and II.P.4, *infra*, and as authorized by the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over the Litigation, to be paid to the Named Plaintiffs and to Joann Carter and Kevin Sautel, who are Opt-in Plaintiffs and served as proposed class representatives, but who were never formally added as Named Plaintiffs to the operative complaint before execution of this Agreement, in recognition of their service to the Settlement Classes in the Litigation.

19.    **"Settlement Administrator"** means the firm of Epiq Class Action & Mass Tort Solutions, Inc., or any other firms or successors designated by the parties and approved by the Court with jurisdiction over the Litigation, to effectuate the settlement by issuing notice of the settlement, collecting required tax/claim forms, distributing Settlement Payments, distributing copies of the order granting final approval of this settlement, and any

11

other tasks specified in this Agreement or by order of the Court with jurisdiction over the Litigation.

      20.    **"Settlement Class Members"** means those persons who are members of the Settlement Classes, defined below, and who do not properly and timely opt out of the Litigation in accordance with the opt-out procedures described herein in Part II.J.3, *infra*, associated with the Notice of Settlement.

      21.    **"Settlement Classes"** are defined as follows:

      (i.)    Opt-in Plaintiffs, as defined herein, who have not withdrawn their consent to participate in plaintiffs' FLSA claims as party plaintiffs, as of the time the Motion for Preliminary Approval is filed with the Court; or

      (ii.)    Per-visit Clinicians, as defined herein, employed by Defendant in the Commonwealth of Pennsylvania between July 25, 2009 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement, but excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of employment, agreed to be subject to Amedisys's Dispute Resolution Agreement at the time of hire (which requires individuals to submit most employment-related disputes to mandatory arbitration); or

      (iii.)    Per-visit Clinicians, as defined herein, employed by Defendant in the Commonwealth of Kentucky between February 28, 2010 and the date of the entry of the Court's Order Granting Preliminary

Approval to this settlement, but excluding any such individual who was employed by Defendant in 2013, at the time Defendant initially rolled out its Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration), and who did not timely opt out of that arbitration program or who did not timely submit a written consent form requesting to participate as a party plaintiff in Plaintiffs' claims under the federal FLSA, and excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of employment, agreed to be subject to the Dispute Resolution Agreement at the time of hire.

22.    **"Settlement Expenses"** means all expenses associated with administering the settlement, including, but not limited to, the costs of the Settlement Administrator, the costs of mailing the Notice of Settlement, and the costs of disbursing the settlement proceeds, which shall be determined by the Settlement Administrator prior to the mailing of the Notice of Settlement.

23.    **"Settlement Payments"** means the amounts to be paid to individual Authorized Claimants from the Revised Gross Settlement Amount.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

13

Plaintiffs (for themselves and the Settlement Classes defined above) and Defendant, by and through their respective attorneys, HEREBY FURTHER STIPULATE AND AGREE as follows:

### B.     Scope of Settlement

The settlement described herein will resolve fully and finally all of the released claims as described herein, in Part II.I, *infra*.

### C.     Authority to Execute Settlement

The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the parties to the terms and conditions hereof, as detailed below.

Plaintiffs' Attorneys acknowledge that they have retainer agreements with the Named Plaintiffs and with Joann Carter and Kevin Sautel, and that each Opt-in Plaintiff has signed and filed with the Court a written consent to participate in the Litigation as a party plaintiff.  Pursuant to these retainer agreements and consent forms, Plaintiffs' Attorneys represent that they have authority to negotiate and execute a settlement agreement on behalf of Plaintiffs.  Upon approval by the Court, such settlement agreement shall bind the members of the Settlement Classes to all terms set forth in this Agreement, regardless of whether any particular member of the Settlement Classes timely submits the required tax forms, submits a required claim form, or receives a Settlement Payment, described herein in Parts II.H, II.J.3, II.K, and II.P.2, *infra*, so long as such individual has not timely opted out of this settlement pursuant to the opt-out procedures described herein in Part II.J.3 *infra*.

It is agreed that because the members of the Settlement Classes are so numerous, it is impossible or impractical to have each member of the Settlement Classes execute the Agreement. The Notice of Settlement, in the forms attached hereto as Exhibit 1, which shall be submitted to

the court with jurisdiction over the Litigation for approval, will advise all members of the Settlement Classes of the binding nature of the release of claims described in this Agreement (*see* Part II.I, *infra*), and that the release will have the same force and effect upon members of the Settlement Classes as if the Agreement were executed by each member of the Settlement Classes.

###   D.     Court Approval of Settlement

The parties agree that Plaintiffs will move the Court with jurisdiction over the Litigation for approval of the settlement described herein.  Defendant will not oppose Plaintiffs' motions seeking approval of this settlement.

As part of the approval process, Plaintiffs will request Service Awards for the Named Plaintiffs and for Joann Carter and Kevin Sautel, as set forth herein.  Defendant agrees not to oppose such a request, so long as Plaintiffs do not request Service Awards of more than $10,500 each for Named Plaintiffs and of more than $6,250 each for Joann Carter and Kevin Sautel. Further, Plaintiffs' Attorneys will petition the Court for an award of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as set forth herein.  Defendant agrees not to oppose such a petition, so long as the amount of Plaintiffs' Attorney's Fees sought does not exceed one-third of the Gross Settlement Amount, as defined herein, and the Plaintiffs' Litigation Expenses sought are taxable pursuant to 29 U.S.C. § 1920 and do not exceed a total amount of $112,000.

Any award of Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, and/or Service Awards approved by the Court will be paid solely from the Gross Settlement Amount.  In no event will Defendant be required to pay more than the Gross Settlement Amount, except that Defendant will also pay its share of employer payroll taxes associated with payments attributable to back wages to Authorized Claimants pursuant to this Agreement.

The parties' agreement to settle Plaintiffs' claims in the Litigation, as set forth in this Agreement, is contingent upon the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction of the Litigation, granting final approval of the settlement and, in the event such court grants final approval of the settlement and an appeal of the final approval order is filed, contingent upon the final approval order being affirmed on appeal in a form substantially identical to the form of the final approval order entered by the court with respect to all material terms.  Should the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction of this matter, decline to approve all material aspects of this Agreement, or make rulings substantially altering the material terms of this Agreement, except for the awards of Plaintiffs' Attorney's Fees, Litigation Expenses, and Service Awards (each of which will be decided by the Court), Defendant will have no obligation to make any payment pursuant to this Agreement, including payment of any portion of the Gross Settlement Amount.

### E.   Certification of the State Law Settlement Classes Solely for Settlement Purposes

As part of the process of seeking approval of this Agreement, Plaintiff shall file their Second Amended Complaint, which the Court previously granted them leave to file in the Litigation, before filing a Motion for Preliminary Approval.  Defendant shall answer Plaintiffs' Second Amended Complaint within fifteen (15) days following the filing of Plaintiffs' Second Amended Complaint.

Additionally, solely for purposes of settlement, the parties' agree that Plaintiffs shall request, as part of the motion for preliminary approval, that the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction of this matter, certify the following state law Settlement Classes, defined *supra*, pursuant to Federal Rule of Civil Procedure 23:

2026427.1

(i)     Per-visit Clinicians, as defined herein, employed by Defendant in the Commonwealth of Pennsylvania between July 25, 2009 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement, but excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of employment, agreed to be subject to Amedisys's Dispute Resolution Agreement at the time of hire (which requires individuals to submit most employment-related disputes to mandatory arbitration); or

(ii.)   Per-visit Clinicians, as defined herein, employed by Defendant in the Commonwealth of Kentucky between February 28, 2010 and the date of the entry of the Court's Order Granting Preliminary Approval to this settlement, but excluding any such individual who was employed by Defendant in 2013, at the time Defendant initially rolled out its Dispute Resolution Agreement (which requires individual to submit most employment-related disputes to mandatory arbitration), and who did not timely opt out of that arbitration program or who did not timely submit a written consent form requesting to participate as a party plaintiff in Plaintiffs' claims under the federal FLSA, and excluding any such individual who was hired by Defendant for the first time after September 2013 and, as a condition of employment, agreed to be subject to the Dispute Resolution Agreement at the time of hire.

The Agreement is contingent upon the approval of, and final certification by, the Court of these Settlement Classes for settlement purposes only.  In agreeing to Plaintiffs moving the Court for certification of these Settlement Classes, Defendant does not waive, and instead expressly

reserves its rights to challenge the propriety of the certification of such classes for any purpose as if this Agreement had not been entered into by the parties should the Court, for any reason, not approve the settlement contained herein.

**F.     Defendant's Payment of Maximum Gross Settlement Amount**

In order to settle the Litigation, and as consideration for Plaintiffs' release of claims, dismissal of the Litigation, and the other good and valuable consideration described herein that Plaintiffs are providing to Defendant, Defendant agrees to pay $8,000,000.00, less the $10,000.00 which Defendant has paid to mediator Hunter R. Hughes for his services in connection with the parties June 10, 2015, mediation, which shall be used to provide for: (i) cash Settlement Payments to Authorized Claimants, as described in this Agreement; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorney's Fees, payable as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

Pursuant to this Agreement, Defendant will not be required to pay any amount over $8,000,000.00, less the $10,000.00 which Defendant has already paid to mediator Hunter R. Hughes for his services in connection with the parties June 10, 2015, mediation, to settle Plaintiffs' claims in the Litigation. This amount, which is the negotiated and mutually agreeable Gross Settlement Amount defined *supra*, represents the maximum gross amount Defendant would pay pursuant to this Agreement in the event every member of the agreed Settlement Class timely participated in the settlement and received Settlement Payments. The Gross Settlement Amount is inclusive of Settlement Payments payable to Authorized Claimants, as well as any award of Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, Settlement Expenses, and Service Awards. However, the maximum Gross Settlement Amount will not include the

employer's share of taxes due on portions of any Settlement Payment attributable to wages.

G.     **Individual Settlement Awards and Minimum Settlement Awards**

All Settlement Payments shall be paid from the Revised Gross Settlement Amount.  Prior to filing the Motion for Preliminary Approval of this settlement, the parties will agree on a methodology for calculating individual Settlement Payments.

Each Authorized Claimant who has timely submitted the required tax and/or claim forms, as specified herein (*see* Part II.H, II.J.3 and II.K, *infra*), shall be entitled to receive a minimum of $100.00 under this settlement.  However, to the extent that Authorized Claimants do not timely or properly submit the required tax and/or claim forms, opt out the settlement pursuant to the procedures specified in Part II.J.3, *infra,* or otherwise elect not to accept the payment of their designated share of the Revised Gross Settlement Amount, their share of the Revised Gross Settlement Amount will remain the sole and exclusive property of Defendant.

H.     **Tax Treatment**

The parties agree that each Settlement Payment to be issued to each Authorized Claimant pursuant to this Agreement shall be separated into two equal amounts:  50 percent shall be allocated to the claims asserted in the Litigation for unpaid overtime and other claims for unpaid wages; and 50 percent shall be allocated to the claims asserted in the Litigation for liquidated damages and other relief.  The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. However, Defendant will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount.  The portion of each Settlement Payment allocated to liquidated damages and other relief shall be

19

characterized as non-wage income to the recipient.

The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099.   Additionally, Authorized Claimants will be issued an I.R.S. Form 1099 for their pro rata share of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses provided to Plaintiffs' Attorneys pursuant to this Agreement and settlement.  The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual.

In order to allow for the proper tax withholdings from the Settlement Payments, and to allow for the submission of information returns associated with those payments to the appropriate tax authorities, each member of the Settlement Classes shall be required to provide an I.R.S. Form W-4 and an I.R.S. Form W-9, or equivalent, before receiving a Settlement Payment.  Members of the Settlement Classes shall be provided with such forms (or equivalents) by the Settlement Administrator as part of the notice process, described herein in Part II.J.2, *infra*, and shall have 60 calendar days from the mailing of the notice packet to timely return them to the Settlement Administrator via U.S. mail, e-mail, or facsimile if they wish to receive a Settlement Payment.  Any such forms (or equivalents) postmarked more than 60 calendar days after the mailing of the notice packet shall not be accepted by the Settlement Administrator, unless actually received via facsimile or email no more than 60 calendar days after the mailing of the notice.

I.      **Release of Claims**

In order to settle the Litigation, and as consideration for Defendant's payment of the Gross Settlement Amount, which shall provide for cash Settlement Payments to Authorized Claimants, Service Awards, Plaintiffs' Attorney's Fees, Plaintiffs' Litigation Expenses, and Settlement Expenses, and the other good and valuable consideration described herein, Plaintiffs agree to release any claims they may have against Defendant only as described herein.

1.      **Description of released claims**

Effective as of the Effective Date, each and every Named Plaintiff hereby forever completely settles, compromises, releases, and discharges Defendant from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Named Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reason of the negotiations leading to this Agreement, except to the extent that any such claim may not be waived as a matter of law.  Each and every Settlement Class Member hereby forever completely settles, compromises, releases, and discharges Defendant from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except

21

to the extent that any such claim may not be waived as a matter of law.  The claims released by both Named Plaintiffs and each and every Settlement Class Members specifically include without limitation  (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under Pennsylvania state law, including but not limited to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 330.101, *et seq.*, and Pennsylvania Wage Payment Collection Law, 42 Pa. Stat. Ann. § 330.101, *et seq.*, and any and all claims under Kentucky state law, including but not limited to Kentucky's Wage and Hour Act, KRS Ch. 337; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit, quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other

22

laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This Release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the date the settlement has received final approval from the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over this Litigation.

The settlements, compromises, releases, and discharges described in the preceding paragraph, with the exception of claims of retaliation, shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over this matter.   With respect to claims of retaliation, such settlements, compromises, releases, and discharges shall extend to any such claims that arose at any time up to and including the date of the Order Granting Preliminary Approval.

2.      **Agreement not to seek or accept relief in any other action**

The Settlement Class Members further covenant and agree that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, other damages, or any other form of relief based on any claims asserted or settled in this Litigation, which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against any Defendant.   Settlement Class Members further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement.

2026427.1

3.      **Recognition of binding nature of release**

The parties agree that as of the Effective Date all Authorized Claimants will be bound by the terms and conditions of this Agreement, the order by the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction of the Litigation, granting final approval to the Agreement and this settlement, the final judgment in the Litigation, and the releases set forth herein.

**J.      Settlement Administrator and Notice Process**

The parties agree that Epiq Class Action & Mass Tort Solutions, Inc., a neutral third party, shall serve as the Settlement Administrator for this settlement, if approved by the Court with jurisdiction over the Litigation. To that end, as part of their Motion for Preliminary Approval, Plaintiffs shall request that the Court approve Epiq Class Action & Mass Tort Solutions, Inc. to serve in this capacity and order Epiq Class Action & Mass Tort Solutions, Inc. to perform the specific tasks assigned to the Settlement Administrator in this Agreement or by order of the Court with jurisdiction over the Litigation, and only those tasks, unless otherwise agreed to by the Parties.  This shall include the issuance of the agreed Notice of Settlement, substantially in the forms attached hereto as Exhibit 1, to all members of the Settlement Classes defined herein after entry of the Order Granting Preliminary Approval of the settlement outlined in this Agreement.

1.      **Providing and updating contact information for members of the Settlement Classes**

Within 14 calendar days after the date the court enters an Order Granting Preliminary Approval of this Agreement, Plaintiffs will provide the Settlement Administrator with the names and last known mailing address for the Named Plaintiffs and all Opt-in Plaintiffs.  Within that

2026427 1

same time period, Defendant will provide the Settlement Administrator with the Social Security number for each Named Plaintiff and Opt-in Plaintiffs, as well as the name, last known mailing address, Employee ID number, and Social Security number for all other members of the Settlement Classes from Defendant's records. This information will remain confidential and will not be disclosed to anyone (including Plaintiffs' Attorneys) other than the Settlement Administrator, with the exception of applicable taxing authorities or pursuant to express written authorization by the party providing the information or by court order.

In order to ensure that the Settlement Administrator has the most up to date addresses possible, the Settlement Administrator shall update all addresses the parties provide for the members of the Settlement Classes using the national change of address database and by performing a "skiptrace."  Any fees or costs incurred by the Settlement Administrator in updating addresses are Settlement Expenses and are included in the Gross Settlement Amount.

2.      **Mailing of the Notice of Settlement and related materials**

Within 30 calendar days after the Court enters an Order Granting Preliminary Approval of the Agreement, the Claims Administrator will mail the Notice of Settlement. The Notice of Settlement shall consist of a single mailing to all individuals who are members of the Settlement Classes defined herein. The Settlement Administrator shall issue the Notice of Settlement by First Class U.S. Mail using envelopes that may include the name and/or logo of Plaintiffs' Attorneys' law firms, if Plaintiffs' Attorneys provide their logos in a format that the Settlement Administrator can use to print on the outside of the envelopes. Along with the Court-approved Notice of Settlement, the Settlement Administrator shall mail the tax and/or claim forms that members of the Settlement Classes are required to complete in order to receive Settlement Payments, as discussed in greater detail in Part II.H, *supra*, and Parts II.J.3 and II.K, *infra*, and a

postage pre-paid return envelope.  The Settlement Administrator shall not send any kind of "reminder" notice to members of the Settlement Classes.   Notwithstanding this fact, the Settlement Administrator may provide replacement copies of the Notice of Settlement and related tax and/or claim forms to members of the Settlement Classes via the website discussed in Part II.J.4, *infra*.   Additionally, should any member of the Settlement Classes contact the Settlement Administrator to request replacement copies of the Notice of Settlement and related tax and/or claim forms, the Settlement Administrator shall direct the individual to the website and/or mail such individual replacement copies.

3.      **Responses to the Notice of Settlement**

The Notice of Settlement will inform the Settlement Classes that any Settlement Class Member who wishes to receive a Settlement Payment must return an I.R.S. Form W-4 and an I.R.S. Form W-9, or equivalent, to the Settlement Administrator.  Additionally, any Settlement Class Member who is not a Named Plaintiff or Opt-in Plaintiff must return a simple claim form, a copy of which is included as Exhibit 2, in order to receive a Settlement Payment.  Settlement Class Members shall have no more than 60 calendar days following the mailing of notice to postmark, email, or fax required tax and/or claim forms to the Settlement Administrator.  In the event a member of the Settlement Classes submits the required tax and/or claim forms in a timely manner (*i.e.*, emailed, faxed, postmarked within the 60 days of the mailing of the Notice of Settlement), but the tax and/or claim forms are incomplete or otherwise deficient in one or more aspects, the Settlement Administrator will (no later than 14 calendar days of receipt of the incomplete or deficient form or forms) return the deficient document to the individual with a letter explaining the deficiencies and stating that the individual will have 10 calendar days from the date the deficiency notice was mailed to correct the deficiencies and resubmit the document.

26

The Settlement Administrator will copy counsel for the parties on such deficiency notices so that Plaintiffs' Attorneys can assist class members in remedying any deficiency. The envelope containing the corrected and resubmitted tax and/or claim forms must be postmarked within 10 calendar days of the date the deficiency notice is mailed to the individual to be considered timely, unless the corrected forms are received by the Settlement Administrator via facsimile or email within 10 calendar days of the date the deficiency notice is mailed. The Settlement Administrator's decision on whether the deficiency has been remedied shall be binding on the parties and the individual member of the Settlement Classes.

The Notice of Settlement will also explain the option for members of the Settlement Classes who are not Named Plaintiffs or Opt-in Plaintiffs to opt out of the settlement. Opt-in Plaintiffs, who previously consented to be bound by any settlement of this action, shall not be provided the opportunity to opt out of the settlement without first receiving Court approval. Any request for exclusion submitted by a Named or Opt-in Plaintiff who has not received prior Court approval shall be rejected, and the Settlement Administrator shall contact such individuals to inform them that they may not opt out of the settlement without first receiving Court approval.

Members of the Settlement Classes who are not Named Plaintiffs or Opt-in Plaintiffs and who wish to opt out of the settlement must submit a written statement expressly asserting that he or she wishes to be excluded from the settlement. Such written statements should state at the top of the letter "Request for Exclusion from Settlement in *Tomkins, et al. v. Amedisys, Inc.*, No. 3:12-cv-1082 (WWE)," and should include the name, address, telephone number, and signature of the individual requesting exclusion from the settlement. All written requests for exclusion must be returned by First-Class U.S. Mail to the Settlement Administrator and must be postmarked no later than 60 calendar days from the postmark of the Notice of Settlement sent to

27

members of the Settlement Classes.   Any member of the Settlement Classes who requests exclusion from the settlement will not be eligible to receive a Settlement Payment and cannot object to the settlement.   In the event that any member of the Settlement Classes timely and properly submits a written request for exclusion, and also timely submits the required tax and claim form necessary to receive a Settlement Payment, or also timely submits an objection to the Settlement, the Settlement Administrator shall contact such individual, inform them that they can cannot request exclusion from the settlement and request a Settlement Payment and/or object to the settlement, and shall ask such individual which option they wish to pursue.   Any member of the Settlement Classes who requests exclusion from the settlement will not be legally bound by the terms of the Agreement or the final order approving the settlement.   In contrast, any member of the Settlement Classes who does not return a valid and timely written request for exclusion will be bound by all terms of the Agreement and the final order approving the settlement, regardless of whether they have objected to the settlement.

Additionally, the Notice of Settlement will inform the Settlement Classes of their right to object to the settlement and that to do so they must file with the U.S. District Court for the District of Connecticut, and serve on counsel for the parties, either a written statement objecting to the settlement or a written notice of their intention to appear and object at the Final Settlement Hearing.   Such written statement or notice must be filed and served within 60 calendar days after the mailing date of the Notice of Settlement.   Persons who are included in the Settlement Classes who fail to timely file and serve written objections or notice of intention to appear and object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the settlement, whether by appeal or otherwise.

The Settlement Administrator shall provide to counsel for both parties, within 90 days of

28

the mailing of the Notice of Settlement a declaration from an appropriate agent or agents working for it, stating under penalty of perjury: (a) the names and addresses of all individuals to whom the Settlement Administrator mailed notice of the proposed settlement, but on Plaintiffs' copy, redacting the names and addresses for any individuals who are not Named Plaintiffs, or Opt-in Plaintiffs, or Authorized Claimants; (b) whether each such individual was an Opt-in Plaintiff or other Settlement Class Member; (c) the form of notice sent to each such individual; (d) whether each such individual timely and properly submitted the required forms to receive a Settlement Payment and, if so, the amount of that payment; and (d) the identify of all such individuals who are not Named Plaintiffs or Opt-in Plaintiffs and who validly and timely requested exclusion from the settlement.  The Settlement Administrator shall not disclose to Plaintiffs or Plaintiffs' Attorneys the names, addresses, contact information, or other personal identifying information for Settlement Class Members who are not Named Plaintiffs or Opt-in Plaintiffs or Authorized Claimants without the express written consent of Defendant's counsel.

4.    **Settlement Administrator's website**

In addition to mailing the Notice of Settlement, the Settlement Administrator shall maintain a simple website from the date that the Notice of Settlement is mailed until 60 calendar days following the mailing of the Notice of Settlement.  The Settlement Administrator shall deactivate the site on the 61 calendar day following the mailing of the Notice of Settlement.  This website shall:  (i) provide a brief summary of who is to receive the Notice of Settlement and the purpose of the Notice of Settlement; (ii) provide members of the Settlement Classes with access to downloadable copies of the Notice of Settlement and the required tax and/or claim forms they are required to submit in order to receive a Settlement Payment; and (iii) contact information for the Settlement Administrator.  The parties shall agree as to the URL for the Settlement

Administrator's website, as well as the specific language and formatting of that website, before it is operational.

### 5. Communications regarding notice process

Other than through the Court-approved Notice of Settlement to be mailed to members of the Settlement Classes by the Settlement Administrator, the website referenced in the preceding section that is to be maintained by the Settlement Administrator, the agreed statements on Plaintiffs' Attorneys' firm websites that are discussed below in Part II.L.1, and assisting in curing deficiencies as described in Part II.J.3, neither Plaintiffs' Attorneys, nor Defendant or its counsel, shall initiate contact with any member of the Settlement Classes regarding the Notice or Settlement or the claims process. That being said, Plaintiffs' Attorneys shall remain free to discuss these issues with any member of the Settlement Classes who first contacts Plaintiffs' Attorneys regarding such issues.

### K. Claims Made Procedure

In order to allow for the proper tax withholdings from the Settlement Payments, and to allow for the submission of information returns associated with those payments to the appropriate tax authorities, each Authorized Claimant shall be required to provide an I.R.S. Form W-4 and an I.R.S. Form W-9, or equivalent, before receiving a Settlement Payment. Each named plaintiff and Opt-in Plaintiff participating in the settlement, will submit an I.R.S. Form W-4 and an I.R.S. Form W-9, or equivalent. Additionally, any Settlement Class Member who is not a Named Plaintiff or Opt-in Plaintiff must return a simple claim form, a copy of which is included as Exhibit 2, in order to receive a Settlement Payment.

To the extent that any member of the Settlement Classes does not timely submit the required tax and/or claim forms, chooses to opt out the settlement, or otherwise elects not to

accept the payment of their designated share of the Revised Gross Settlement Amount, their share will remain the sole and exclusive property of Defendant.

    **L.**     **Communications Regarding the Settlement, Claims Against Defendant, and the Parties to the Litigation**

          **1.**     **Public Comment and Non-disclosure**

The parties agree that, except as provided for in Section J governing Notice, they will not publicize the settlement of the Litigation, any details of that settlement or this Agreement, or any of the events and negotiations surrounding the Agreement or settlement, until after the Effective Date. After the Effective Date, the parties agree that Named Plaintiffs and Plaintiffs' Attorneys and Defendant and Defendant's counsel will not disclose the terms of the settlement or this Agreement to any third parties, except to immediate family, attorneys, tax counselors, or as required by law. If asked about the settlement or this Agreement by any third party, Named Plaintiffs and Plaintiffs' Attorneys, and Defendant and Defendant's counsel, will acknowledge only that: "The action was resolved on a satisfactory basis;" and/or that "[Plaintiffs or Defendant] and their counsel believe they have reached a fair and reasonable settlement of the disputed claims." For purposes of this provision, "Defendant" constitutes its corporate Legal personnel, its corporate Human Resources personnel, its corporate marketing and communications personnel, and its corporate officers and directors.

Notwithstanding the foregoing, Plaintiffs' Attorneys shall be permitted to list the existence of the settlement on this action on their firms' websites. In doing so, however, Plaintiffs' Attorneys may not disclose any of the specific terms of the settlement or this Agreement, including the amount of the settlement. Their websites may, however, refer members of the Settlement Classes who have questions about the settlement, or need

31

replacement copies of materials related to the settlement, such as the Notice of Settlement or required tax and/or claim forms, to the website maintained by the Settlement Administrator, which is discussed, *supra*, in Part II.J.4.

2. **Non-Solicitation**

As explained in Part II.J.5, *supra*, neither Plaintiffs' Attorneys, nor Defendant or its counsel, shall contact any member of the Settlement Classes regarding the Notice or Settlement or the claims process. However, Plaintiffs' Attorneys shall remain free to discuss these issues with any member of the Settlement Classes who first contacts Plaintiffs' Attorneys regarding such issues.

Similarly, the Named Plaintiffs, Opt-in Plaintiffs, and Plaintiffs' Attorneys will not contact, solicit, or otherwise encourage other current or former employees of Defendant to assert claims against Defendant. However, should one of Defendant's current or former employees who is not already a Named Plaintiff or Opt-in Plaintiff contact Plaintiffs' Attorneys about a potential claim against Defendant, Plaintiffs' Attorneys will be free to follow their professional judgment in advising such an individual about a potential claim regarding Defendant.

3. **Non-Disparagement**

Both Plaintiffs and Defendant will refrain from disparagement of the other. For purposes of this clause, "Defendant" constitutes its corporate Legal personnel, its corporate Human Resources personnel, Defendant's counsel in this matter, and its corporate officers and directors.

**M.     No Right to Rehire**

Named Plaintiffs agree that they shall have no right to rehire with Defendant. However, Defendant agrees that, notwithstanding Named Plaintiffs' waiver of any right to rehire, in the event any Named Plaintiff is employed by another company that is acquired by Defendant,

32

Defendant shall not automatically terminate such Named Plaintiff as a result of their waiver of any right to rehire by Defendant in this Agreement. Nor shall this "No Right to Rehire" provision bar a Named Plaintiff from asserting a potential legal claim, resulting from Defendant's termination of Named Plaintiff following Defendant's prospective acquisition of another company where Named Plaintiff is already employed.

### N.    Service Awards

As part of the settlement, Plaintiffs will request Service Awards for the Named Plaintiffs and for Opt-in Plaintiffs Joann Carter and Kevin Sautel, who served as proposed class representatives, but who were never formally added as named plaintiffs to the operative complaint. Defendant agrees not to oppose such a request, so long as the amount of the Service Awards sought for the Named Plaintiffs does not exceed $10,500 each, and the amount of the Service Awards sought for Opt-in Plaintiffs Joann Carter and Kevin Sautel do not $6,250 each.

### O.    Plaintiffs' Attorneys' Fees and Litigation Expenses

Plaintiffs' Attorneys may make an application or applications to the U.S. District Court for the District of Connecticut, or any other Court taking jurisdiction over the Litigation, for an award of Plaintiffs' Attorney's Fees and an award of Plaintiffs' Litigation Expenses. The amount of the Plaintiffs' Attorney's Fees will not exceed one third of the Gross Settlement Amount. The amount of Plaintiffs' Litigation Expenses shall not exceed $112,000. Such application or applications shall be filed in connection with the Motion for Preliminary Approval of the Agreement and this settlement. Defendant will not oppose any such application for fees or costs, provided that Plaintiff's Attorneys do not seek to recover attorney's fees in excess of one third of the Gross Settlement Amount and do not seek to recover litigation costs that are not taxable pursuant to 29 U.S.C. § 1920 and do not exceed $112,000.

33

If the Court rules that any amounts requested by Plaintiffs' Attorneys as an award of Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses are excessive or improper, and reduces the same, only the reduced amounts will be deemed to be Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses for purposes of this Agreement. Any remaining or reduced amounts shall be added to the Revised Gross Settlement Amount available for distribution to Authorized Claimants.

Payment of such Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys as set forth in this Agreement, and payment of Settlement Expenses, shall constitute full satisfaction of any and all obligations by Defendant to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Attorneys) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to any experts and/or consultants and any fees, costs, and expenses associated with mediation) incurred on behalf all members of the Settlement Classes, and shall relieve Defendant of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of any members of the Settlement Classes for this Litigation. Upon payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses hereunder, and payment of Settlement Expenses, Plaintiffs' Attorneys and members of the Settlement Classes shall release Defendant from any and all claims for attorneys' fees, expenses, and costs relating to this Litigation.

Plaintiffs' Attorney's Fees and Litigation Expenses, and the Settlement Expenses, will be paid solely from the Gross Settlement Amount. In no event shall any award of Plaintiffs' Attorney's Fees and Litigation Expenses to Plaintiffs' Attorneys, or the payment of Settlement Expenses, cause Defendant to pay more than the Gross Settlement Amount in full satisfaction of

34

all its obligations under this Agreement.

P.   **Funding of Gross Settlement Amount and Payments from Gross Settlement Amount**

1.   **Defendant's payment of the Gross Settlement Amount**

Defendant will pay the Gross Settlement Amount to the Settlement Administrator seven calendar days after the Effective Date, where it shall be deposited and maintained in a Qualified Settlement Fund.

2.   **Settlement Administrator's issuance of Settlement Payments to Authorized Claimants**

Within 15 calendar days Defendant's payment of the Gross Settlement Amount is received by the Settlement Administrator, the Settlement Administrator will make Settlement Payments by U.S. Mail to each Authorized Claimant.  The checks making such Settlement Payments shall include language, to be agreed to by the parties, indicating that by signing the check the Authorized Claimant acknowledges the release of claims set forth, *supra*, in Part II.I. Copies of each negotiated check showing this acknowledgment and the Authorized Claimant's signature shall be provided to Defendant by the Settlement Administrator.

Those members of the Settlement Classes who have properly and timely opted out of the settlement are not Authorized Claimants and are not entitled to a Settlement Payment. Additionally, any Settlement Class Member who did not timely submit to the Settlement Administrator an I.R.S. Form W-4 and an I.R.S. Form W-9, or equivalent, and any Settlement Class Member who is not a Named Plaintiff or Opt-in Plaintiff who did not timely return a claim form, a copy of which is included as Exhibit 2, is not an Authorized Claimant and is not entitled to any Settlement Payments.  The Settlement Administrator's determination of whether a member of the Settlement Classes is an Authorized Claimant will be conclusive and binding on

all Settlement Class Members, subject to the dispute resolution provisions of this Agreement as set forth in Part II.Q, *infra*. Regardless of whether or not a member of the Settlement Class is an Authorized Claimant, the Settlement Administrator shall send each such individual a copy of the Court's order granting final approval to this settlement agreement by U.S. Mail, at the same time that it issues Settlement Payments to Authorized Claimants.

Each Authorized Claimant who is entitled to receive a Settlement Payment will have 90 calendar days from the date on which the Settlement Payment is mailed to negotiate his or her settlement check. If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any individual Settlement Payments which remain unclaimed for any reason 90 calendar days following the mailing of the Settlement Payment shall be deemed unclaimed. In such event, the Authorized Claimants whose Settlement Payment is unclaimed will be deemed to have irrevocably waived any right in or claim to any Settlement Payment, but the Agreement and release of claims contained therein nevertheless will be binding upon them. Unless otherwise required by the relevant states' escheatment laws, 100 percent of such unclaimed funds shall be available for an additional 60 calendar days (*i.e.*, 150 calendar days following the mailing of the Settlement Payment) to pay claims of Settlement Class Members who (a) were erroneously not sent notice; or (b) would otherwise be deemed ineligible due to late submission of required forms, if the Settlement Administrator deems, in its sole discretion, that the late submission was due to excusable neglect or circumstances outside the Settlement Class Member's control. Following that additional 60-day period, unless otherwise required by the relevant states' escheatment laws, and unclaimed funds not redistributed in accordance with the preceding sentence shall revert to and remain the exclusive property of Defendant.

36

Neither Defendant, counsel for Defendant, Plaintiffs' Attorneys, Plaintiffs, nor the Settlement Administrator shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event an individual entitled to receive a Settlement Payment and notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check. If the settlement check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check, from which the fees associated with the stop payment order will first be deducted. Any individual entitled to receive a Settlement Payment who receives a re-issued check will have an additional 45 calendar days to negotiate such re-issued check from the date of its mailing. If any settlement check is not negotiated in that period of time, that settlement check will be voided.

At an appropriate time following the issuance of Settlement Payments to Authorized Claimants, the Settlement Administrator will issue to each Authorized Claimant an I.R.S. Form W-2 for the portion of his or her Settlement Payments attributable to wages, an I.R.S. Form 1099 for the portion of his or her Settlement Payment attributable to non-wages, and an I.R.S. Form 1099 for his or her pro rata share of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses provided to Plaintiffs' Attorneys pursuant to this Agreement and settlement.

   **3.**  **Settlement Administrator's payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses**

Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as authorized by the court with jurisdiction over the Litigation, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or

37

within five calendar days of a court order in this Litigation awarding Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, whichever is later.  Prior to payment of any Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, Plaintiffs' Attorneys shall inform the Settlement Administrator of the proper apportionment of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses authorized by the court between their respective firms.

The Settlement Administrator will issue an I.R.S. Form 1099 to each of Plaintiffs' Attorneys firms for the payments and each of Plaintiffs' Attorneys firms will provide the Settlement Administrator with completed I.R.S. Form W-9s.

### 4.     Settlement Administrator's payment of Service Awards

Service Awards for the Named Plaintiffs and for Opt-In Plaintiffs Joann Carter and Kevin Sautel, if authorized by the court with jurisdiction over the Litigation, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or within five calendar days of a court order in this Litigation authorizing such Service Awards, whichever is later.  The Settlement Administrator will pay the Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments.

At an appropriate time following the issuance of such Service Payments the Settlement Administrator will issue to each recipient an I.R.S. Form 1099 that accounts for the payment of the Service Awards.

### 5.     Payment of the Settlement Administrator's Expenses

The charges and costs incurred by the Settlement Administrator in performing its duties under this Agreement will be paid solely from the Gross Settlement Amount.  The Settlement

38

Administrator shall determine the final amount of such charges and costs prior to mailing the Notice of Settlement.  Disputes of any kind relating to the Settlement Administrator will be resolved pursuant to the dispute resolution procedures set forth in Part II.Q, *infra*, if they cannot be resolved informally by the parties.  The Settlement Administrator will regularly report to the parties, in written form, the substance of the work performed, including all amounts paid under this Agreement.

### Q.   Dispute Procedure

Except as otherwise set forth herein (*see* Parts II.Z & II.DD.1, *infra*), in the event of a dispute concerning the proper interpretation of the Agreement, the enforcement of this Agreement, the parties' rights or obligations under the Agreement, or any alleged breach of the terms of the Agreement, notice must be mailed to counsel for the opposing party as provided in Part II.Y, *infra*.  After receipt of such notice, the parties shall meet and confer in a good faith attempt to resolve the matter for 10 calendar days.  In the event those efforts are unsuccessful, and one or more of the parties attempts to institute any legal action or other proceeding against any other party or parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred.

### R.   Assignment of Claims

Defendant and its counsel, and Plaintiffs' Attorneys, Named Plaintiffs, and proposed named plaintiffs Joann Carter and Kevin Sautel, for themselves and on behalf of all Opt-in Plaintiffs and all other members of the Settlement Classes, represent, covenant and warrant that

39

they have not directly or indirectly, assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

The parties further agree that this Agreement will be binding upon, and inure to the benefit of, the parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

### S.     Denial of Liability

Defendant denies that it has failed to comply with the law in any respect, or has any liability under the claims asserted in the Litigation.   The parties acknowledge that this Agreement is entered into for the purpose of compromising disputed claims and that nothing herein is an admission of liability, wrongdoing, or the propriety of collective or class treatment by Defendant.   Neither the Agreement nor any document prepared in connection with the settlement may be admitted in any proceeding as an admission by Defendant.   Notwithstanding this paragraph, any and all provisions of this Agreement may be admitted in evidence and used in any proceeding to enforce the terms of this Agreement or in defense of any claims released or barred by this Agreement.

Additionally, no party will be considered a prevailing party in this Litigation for any purpose, except with respect to the evaluation of Plaintiffs' motion for an award of attorneys' fees, for which Plaintiffs will be treated as a prevailing party.

### T.     Construction and Interpretation

The parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arms-length negotiations among the parties, through counsel, and the Agreement shall not be construed in favor of or against any party by reason of the extent to

40

which any party or his, her, or its counsel participated in the drafting of the Agreement.

Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or an of its provisions. With the exception of Part I, *supra*, each term of this Agreement is contractual and not merely a recital.

All exhibits attached to the Agreement, and referenced herein, are incorporated into the Agreement by such references and are a material part of this Agreement. Any notice or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Agreement to become effective.

This Agreement shall be governed by and enforced in accordance with the laws of the State of Connecticut.

### U.    Modification

This Agreement, and any of its parts, may be amended, modified, or waived only by an express written instrument signed by all signatories below or their successors-in-interest.

### V.    Counterparts

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

### W.    Return Of Discovery

Plaintiffs and Plaintiffs' Attorneys agree to return to Defendant or destroy all discovery obtained from Defendant during the course of the Litigation within 60 calendar days of the Effective Date. This includes all copies of such discovery, whether in hardcopy or electronic format. However, Plaintiffs' Attorneys may retain a copy of all pleadings filed in this matter,

41

including any exhibits thereto.  Further, Plaintiffs' Attorneys may retain any work product which refers to or quotes from discovery documents.  Plaintiffs' Attorneys will notify Defendant in writing if they or Plaintiffs elect to destroy discovery.  Plaintiffs and Plaintiffs' Attorneys agree not to send or otherwise disseminate discovery to any other individual or entity before its return or destruction.

### X.      Waiver of Right To Object

By signing this Agreement, Named Plaintiffs and Joann Carter and Kevin Sautel agree to be bound by its terms.  Like all of the Opt-in Plaintiffs, these individuals previously executed a written consent to participate in the Litigation as party plaintiffs, which was filed with the Court, agreeing to be bound by any settlement of the Litigation.  Accordingly, Named Plaintiffs and Joann Carter and Kevin Sautel agree not to request to be excluded from the settlement and not to object to any of the terms of the settlement.  Any request for exclusion by Named Plaintiffs and Joann Carter and Kevin Sautel, or any objection by them, will be void and have no force and effect.  Likewise, Defendant agrees to be bound by the terms of this settlement and agrees not to object to any of the terms of the settlement.  Non-compliance by Defendant with this paragraph will be void and have no force and effect.

### Y.      Notices, Demands, and Communications Concerning the Settlement

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by First Class U.S. Mail, addressed as follows:

To Plaintiffs, Named Plaintiffs, Opt-in Plaintiffs, members of the Settlement Classes, and/or Plaintiffs' Attorneys:

Christine E. Webber, Esq.
COHEN MILSTEIN SELLERS & TOLL PLLC

1100 New York Avenue, N.W., Suite 500 East
Washington, DC 20005
cwebber@cohenmilstein.com

<u>To Defendant and/or counsel for Defendant:</u>

Michael S. McIntosh, Esq.
LITTLER MENDELSON, P.C.
1650 Tysons Boulevard, Suite 700
McLean, VA 22102
mmcintosh@littler.com

**Z.    Form and Content Resolution**

The parties agree they must reach agreement on the form and content of the Agreement and its exhibits, as well as: Plaintiffs' unopposed motion for preliminary approval of the settlement and authorization to send notice to members of the Settlement Classes concerning the settlement and the final fairness hearing; a proposed order granting the same unopposed motion; the notices to be sent to members of the Settlement Classes concerning the settlement, including the format of the tax forms they are required to complete in order to receive a Settlement Payment; the website to be run by the Settlement Administrator (discussed in Part II.J.4, *supra*); Plaintiffs' unopposed motion for final approval of the settlement; and a proposed order granting the same unopposed motion.

The parties agree that in the event they dispute and reach impasse as to any of the settlement terms, or the form and content of any documents listed in the preceding paragraph, or any other document necessary to effectuate the Agreement, that cannot be resolved among the parties themselves, or, where appropriate, with the assistance of the Settlement Administrator, any and all such disputes may be submitted to mediator Hunter R. Hughes for final and binding resolution.  The cost incurred for the services of Mr. Hughes shall be paid entirely from the Gross Settlement Amount, and the parties shall bear their own respective expenses for attorneys'

fees, expenses, and costs.

### AA.   Authorization

Plaintiffs' Attorneys warrant and represent that they are fully authorized by Plaintiffs, and the attorneys for Defendant warrant and represent that they are fully authorized by Defendant, to take all appropriate action required or permitted by this Agreement.  The parties agree to fully cooperate with each other to accomplish the terms of the settlement and this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement.  The parties to the Agreement shall use their best efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the U.S. District of Connecticut, or any other court taking jurisdiction over the Litigation, or otherwise, to effectuate the Agreement and the terms set forth herein.  If the parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, the parties agree, in accordance with Part II.Z, *supra*, to seek the assistance of mediator Hunter R. Hughes.

### BB.   Dismissal

Upon entry of a final order approving this Agreement, Plaintiffs agree to execute all documents necessary to dismiss with prejudice any and all claims raised against Defendant in the Litigation.  But if an appeal leads to reversal of approval of this Agreement, then the parties agree that the claims will be reinstated as if never dismissed as described in Part II.DD.3(d).

### CC.   Reasonableness Of Settlement

The parties believe that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

44

DD.    **Termination of the Settlement Agreement**

1.    **Grounds for Settlement Termination:**

This Agreement may be terminated on the following grounds:

(a.)    Plaintiffs' Attorneys or Defendant's counsel may terminate the Agreement if the Court declines to enter an Order Granting Preliminary Approval, an order granting final approval to this settlement, or judgment in substantially the same form as that submitted by the parties, or the Agreement does not become final for any other reason, or a Court of Appeals reverses the entry of an order granting final approval to this settlement or a final judgment in this Litigation following such an order, provided that the parties agree to work cooperatively and in good faith, including mediating unresolved differences with mediator Hunter R. Hughes for a period of fourteen (14) calendar days, to address and resolve any concerns identified by the Court in declining to enter an Order Granting Preliminary Approval, an order granting final approval to this settlement, or judgment in the form submitted by the parties.

(b.)    If 25 percent or more of the members of the Settlement Classes who are not Opt-in Plaintiffs exercise their rights to opt out of the settlement and this Agreement, as described in Part II.J.3, *supra*, Defendant shall have the right, notwithstanding any other provisions of this Agreement, to withdraw from this Agreement, whereupon the Agreement will be null and void for all purposes and may not be used or introduced in the Litigation or any other proceeding of any kind.

2.    **Procedures for Termination:**

To terminate this Agreement on one of the grounds specified above, the terminating Counsel (*i.e.*, Plaintiffs' Attorneys or counsel for Defendant) shall give written notice to the opposing counsel no later than:

(a.)     15 business days after the Court acts; or

(b.)     15 business days after Defendant receives notice from the Settlement Administrator that the requisite number of members of the Settlement Classes who are not Opt-in Plaintiffs have timely requested exclusion from the settlement.

**3.      Effect of Termination:**

In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Litigation is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court:

(a.)     The Agreement shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(b.)     In the event the Agreement is terminated, Defendant shall have no obligation to make any payments to any Plaintiff, any member of the Settlement Classes, or Plaintiffs' Attorneys, except that the parties shall be jointly responsible (*i.e.*, each party will be responsible for 50% of fees due) for paying the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the Agreement has been terminated;

(c.)     Any Order Granting Preliminary Approval, granting final approval to this settlement, and/or judgment, including any order of class certification, shall be vacated;

(d.)     The Agreement and all negotiations, statements, and proceedings relating thereto, shall be without prejudice to the rights of any of the parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(e.)     Neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including all matters associated with the mediation) shall

46

be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever;

(f.)    Defendant shall reserve the right to oppose class-action certification and to move to decertify plaintiffs' conditionally certified FLSA collective action should the Agreement not become final.

### EE.    Disclosure Required by Securities Law

Notwithstanding anything to the contrary in this Agreement, it is understood and agreed that Defendant shall be permitted to make such disclosures concerning the settlement and this Agreement as, in the opinion of its securities counsel, are required by the securities laws of the United States and the rules of any applicable stock exchange, if any, without the necessity of providing prior notice to Plaintiffs or obtaining Plaintiffs' consent.

### FF.    Integration Clause

After this Agreement is fully executed by all parties, it will constitute the entire Agreement of the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the parties during the mediation that resulted in this Agreement. This integration clause does not apply to the parties' Confidential Mediation Agreement entered into by the parties March 31, 2015, or the Stipulated Protective Order approved by the Court on May 29, 2013 (Dkt. Nos. 83 & 84).

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

2026427.1

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated: _____     By _____
                       Scott Tomkins
                       Plaintiff


Dated: _____     By _____
                       Joseph G. Husk
                       Plaintiff


Dated: _____     By _____
                       Elizabeth Leung
                       Plaintiff


Dated: _____     By _____
                       Joann Carter
                       Plaintiff


Dated: _____     By _____
                       Kevin Sautel
                       Plaintiff


Dated: 7/28/15         By _Chris E Webber_____
                       Christine E. Webber, Esq.
                       COHEN MILSTEIN SELLERS & TOLL PLLC
                       Attorneys for Plaintiffs


Dated: 7/28/2015       By _Gilda A. Hernandez_____
                       Gilda A. Hernandez, Esq.
                       LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
                       Attorneys for Plaintiffs


Dated: _____     By _____
                       Richard E. Hayber, Esq.
                       HAYBER LAW FIRM
                       Attorneys for Plaintiffs

Dated: _____          By _____
                            Paul Kusserow
                            President and Chief Executive Officer
                            For Defendant, Amedisys, Inc.


Dated: _____          By _____
                            Angelo Spinola, Esq.
                            LITTLER MENDELSON, P.C.
                            Attorneys for defendant, Amedisys, Inc.


Dated: _____          By _____
                            Michael S. McIntosh, Esq.
                            LITTLER MENDELSON, P.C.
                            Attorneys for defendant, Amedisys, Inc.

# Exhibit 1

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

### TOMKINS, *ET. AL* V. AMEDISYS, INC.

# IF YOU WORKED FOR AMEDISYS, INC. AS A REGISTERED NURSE, PHYSICAL THERAPIST, OCCUPATIONAL THERAPIST, OR SPEECH LANGUAGE THERAPIST, AND WERE PAID PER VISIT, IT IS IMPORTANT THAT YOU READ THIS NOTICE OF A PROPOSED SETTLEMENT.

- This is a Court-authorized notice. This is not a solicitation from a lawyer.

- Clinicians have sued Amedisys, Inc. alleging they were not paid correctly for all hours worked. The Court has permitted this lawsuit to proceed on a collective basis.

- The Court has not decided whether Amedisys Inc. did anything wrong. However, the parties have proposed a settlement of this case and the Court has authorized notice of that proposed settlement to individuals who may be eligible to participate in it. Amedisys's and/or plaintiffs' records indicate you are entitled to receive notice and that you may be entitled to a monetary award under the settlement.

- *Your legal rights are affected whether you act or not. Your options are explained in this notice. Please read it carefully.*

### YOU MUST RETURN THE ENCLOSED TAX FORMS BY [MAIL + 60] TO RECEIVE A PAYMENT FROM THIS SETTLEMENT

- [MAIL + 60] is also the deadline to object to the settlement

### SUMMARY

The settlement provides a cash payment to certain current and former employees of Amedisys, Inc. who worked as full-time Registered Nurses, Physical Therapists, Occupational Therapists, or Speech Language Therapists, or in a similar position, in the company's home health division, and who were paid on a "per-visit" basis. The amount of the payments to each settlement participant will vary.

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RECEIVE A SETTLEMENT PAYMENT** | **If you would like to receive a settlement payment** if the Court approves the proposed settlement, **you must complete the tax forms provided along with this notice** and return them to the Settlement Administrator, as explained below in Section 14. Anyone who receives a settlement payment will also be bound by the release of claims explained below in Section 9. |
| **DO NOTHING, DO NOT RECEIVE A SETTLEMENT PAYMENT** | **If you do nothing**, and do not return the tax forms provided along with this notice, **you will not receive a settlement payment**. However, you will still be bound by the release of claims explained in Section 9 if the Court approves the settlement. |

| OBJECT | You can write the Court about why you do not like the settlement. |

- These rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Settlement payments will be made if the Court approves the settlement and after any appeals are resolved.

## BASIC INFORMATION

| 1. | Why did I get this notice? |

You have received this notice package because records indicate you worked for Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division, were paid on a "per-visit" basis, and previously submitted a written consent requesting to participate in this lawsuit as a party plaintiff.

This notice is designed to advise you of how you can participate in this settlement. The Court sent you this notice because you have a right to know about a proposed settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after objections and appeals are resolved, the individual settlement payments provided for by the settlement will be made.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the lawsuit is the United States District Court for the District of Connecticut. The judge presiding over the action is Senior United State District Judge Warren W. Eginton. The case is *Tomkins, et al., v. Amedisys, Inc.*, No. 3:12-CV-01082 (WWE). The people who sued are the "plaintiffs" and the company they sued, Amedisys, Inc., is the "defendant."

| 2. | What is this lawsuit about? |

Plaintiffs Scott Tomkins, Joseph Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel worked as clinicians in defendant Amedisys, Inc.'s home health division. They claim that Amedisys treated them, and other similarly situated clinicians, as exempt from federal and state overtime requirements, but paid such individuals using a "per-visit" compensation model that did not comply with applicable regulations for exempt employees. Plaintiffs further argue that when Amedisys treated them and other per-visit clinicians as "non-exempt" and overtime eligible, it required them to work without reporting all hours and/or did not use the appropriate methodology for computing their overtime pay, thus, denying them full pay for all hours worked, including overtime. Plaintiffs allege Amedisys violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the Commonwealths of Pennsylvania and Kentucky, Penn. Min. Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.100, *et seq.*; Ky. Wage & Hour Act ("KWHA"), Ky. Rev. Stat. Ann. § 337.020, *et seq.* Based on these allegations, plaintiffs seek to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

Amedisys denies each and all of plaintiffs' allegations and expressly denies any and all charges of wrongdoing

or liability in this lawsuit. To the contrary, Amedisys contends it acted in compliance with applicable state and federal laws and paid per-visit clinicians all wages due. Accordingly, Amedisys believes plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs are without merit. Amedisys also denies that the asserted claims are appropriate for collective or class action treatment.

| 3. | What is a "collective action," what is a "class action," and who is involved? |
|---|---|

Under the FLSA, a group of similarly situated individuals may seek to recover unpaid overtime wages and related damages in what is known as a "collective action." In a collective action, those plaintiffs who file consents, or "opt in" to the lawsuit, become plaintiffs. They are sometimes referred to as "opt-in plaintiffs." The individuals who initiate the lawsuit, the "named plaintiffs," bring the action on behalf of themselves and other people they believe have similar claims who may later choose to join the action.

This type of "opt-in" collective action is different from the better-known "class action," in which no consent is needed to join. In a traditional class action, the "named plaintiffs" sue on behalf of all individuals within a defined class. Individuals who meet the class definition, the "class members," are automatically members of that class unless they file a written request with the Court specifically asking to be excluded.

The named plaintiffs here – Scott Tomkins, Joseph Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel – filed this case as both a collective action and a class action. The collective action under federal law includes full-time Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Language Therapists in the company's home health division who were paid on a "per-visit" basis and already opted in to this case by filing a written consent with the Court. Additionally, the named plaintiffs sought to bring class actions under Pennsylvania and Kentucky state law on behalf of classes of such full-time, per-visit clinicians who worked in Pennsylvania between July 25, 2009 and **[DATE OF PRELIMINARY APPROVAL]** or in Kentucky between February 28, 2010 and **[DATE OF PRELIMINARY APPROVAL]**.

In both types of cases, if the court certifies plaintiffs' claims for class or collective treatment, one court resolves the issues in the case for all opt-in plaintiffs and class members. Here, Senior United State District Judge Warren W. Eginton is in charge of this putative collective/class action. While the Court had not decided whether to grant final certification to plaintiffs' collective-action or class-action claims in the lawsuit, the Court authorized notice be sent to opt-in plaintiffs and potential class members while the Court decides whether to permit this case to proceed as a class action for purposes of settlement.

| 4. | Why is there a settlement? |
|---|---|

Litigation is risky, and neither side can predict the outcome with certainty. This lawsuit has been heavily litigated for a significant period of time (approximately three years) and it would likely be several more years before any final resolution could be reached through litigation.

Given these factors, the named plaintiffs/class representatives and their counsel concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of the opt-in plaintiffs and class members. This settlement avoids the costs and inconvenience associated with the discovery process, as well as the costs and risks associated with dispositive motions and trial, while providing cash benefits to opt-in plaintiffs and class members.

Amedisys expressly denies any liability or wrongdoing and contends it has complied with the applicable federal and state laws at all times. By entering into the settlement agreement, Amedisys has not admitted any liability

or wrongdoing and expressly denies the same.  However, like the named plaintiffs and their counsel, Amedisys recognizes the cost and delay associated with further litigation, and the risk inherent in all lawsuits.  As such, Amedisys agreed to enter into a settlement to avoid the costs and disruption of ongoing litigation and to settle the outstanding claims against it.

The Court has not decided in favor of plaintiffs or Amedisys.  Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation.  District Judge Eginton has, however, granted preliminary approval to the parties' proposed settlement.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I am part of the settlement? |
|---|---|

You are eligible to participate in the settlement if you were employed by Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division, were paid on a "per-visit" basis, and previously submitted a written consent form requesting to join the FLSA collective action in *Tomkins, et al., v. Amedisys, Inc.* (No. 3:12-CV-01082 (WWE).  If you were mailed this notice, Amedisys's and plaintiffs' attorneys' records indicate you previously submitted such a written consent.

Additionally, individuals who did not previously submit written consents to join the FLSA collective action in this lawsuit are eligible to participate in the proposed settlement if they were employed by Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division, were paid on a "per-visit" basis, AND:

(a). Worked in the Commonwealth of Pennsylvania between July 25, 2009, and **[DATE OF PRELIMINARY APPROVAL]**, and were not hired for the first time after September 2013 and did not, as a condition of employment, agree to be subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration);

OR

(b). Worked in the Commonwealth of Kentucky between February 28, 2010, and **[DATE OF PRELIMINARY APPROVAL]**, and are not subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration).

| 6. | Are there exceptions to being included? |
|---|---|

All opt-in plaintiffs who previously submitted written consent forms requesting to join the FLSA collective action in this lawsuit have agreed to be bound by any settlement and are included in the settlement unless they seek and receive leave from the Court to be excluded from it.  All other class members, who are part of the proposed settlement solely because they meet one of the definitions above, may request exclusion from the settlement.  Any such individual who timely requests exclusion will receive no settlement payment, but will not be bound by the release of claims explained in Section 9 below.

## THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET

| 7. | What does the proposed settlement provide? |
|---|---|

Amedisys has agreed to pay a total settlement amount of $8,000,000 (the "gross settlement amount") in full settlement of the claims of all opt-in plaintiffs and class members. The gross settlement amount includes all payments to individual opt-in plaintiffs and class members, plaintiffs' attorney's fees and litigation expenses, service awards to the named plaintiffs/class representatives, costs of notice of the settlement, and costs of administration of the settlement. The amount remaining after the payment of class counsel's attorney's fees and expenses, service awards, and costs of settlement administration and notice is referred to as the "revised gross settlement amount." The revised gross settlement amount, less required tax withholdings, will be distributed to individuals who are members of the settlement classes (*i.e.*, opt-in plaintiffs and current and former clinicians from Pennsylvania and Kentucky who meet the definitions in Section 5 above) who timely return the required tax and claim forms explained below in Section 14. The settlement distribution process will be administered by an independent settlement administrator (the "settlement administrator") approved by the Court.

| 8. | What can I get from the proposed settlement? |
|---|---|

If the Court approves the proposed settlement and you timely submit the required tax forms, you will receive a settlement check. All individuals who are eligible to participate in the settlement, and timely submit the required forms, will receive a *minimum* gross payment of one-hundred dollars ($100.00). The exact amount of each individual's payment will depend on a number of factors, including, among others, the number of weeks you worked for Amedisys during the relevant time period, the hours you reported working each week, the number and type of visits you completed each week, and your effective hourly rate.

Each final settlement payment will be separated into two equal amounts: fifty percent (50%) will be allocated to the claims asserted in the lawsuit for unpaid overtime and other wage-related damages, and fifty percent (50%) will be allocated to the claims asserted in the lawsuit for liquidated damages and other relief. The portion allocated to claims asserted in this lawsuit for unpaid overtime and other wage-related damages will be subject to all authorized or required deductions, just as if it were a regular paycheck, including, but not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to claims for unpaid overtime and other claims for unpaid wages will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages and other relief will be reported as non-wage income and reported on an I.R.S. Form 1099. Additionally, the portion of the total settlement fund that is approved by the Court to pay attorneys' fees and litigation expenses is considered to be payments made on behalf of the class members. Therefore, your pro rata portion of that amount will be reported as income to you on an I.R.S. Form 1099. You should consult a tax professional about tax treatment of these payments, and the availability of a tax deduction for your pro-rated amount of attorneys' fees paid.

| 9. | What am I giving up in the settlement? |
|---|---|

The Court's orders in this lawsuit will bind all individuals participating in the settlement and you will be barred from bringing any action against Amedisys, Inc. (including its officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, employee benefits plans, insurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations) that relate to hours worked or the payment of wages, except to the extent that any such claims may not be waived as a matter of law.

This release of claims against Amedisys, Inc. specifically includes, without limitation:

(i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under Pennsylvania state law, including but not limited to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 330.101, *et seq.*, and Pennsylvania Wage Payment Collection Law, 42 Pa. Stat. Ann. § 330.101, *et seq.*, and any and all claims under Kentucky state law, including but not limited to Kentucky's Wage and Hour Act, KRS Ch. 337; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the date the settlement has received final approval from the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over this Litigation.

This release of claims includes past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which you have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law, and shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the Court, except with respect to claims of retaliation, which shall extend to any such claims that arose at any time up to and including **[DATE OF PRELIMINARY APPROVAL]**.

| 10. | Are my legal rights affected if I submit the required forms to receive a payment? |
|-----|-----------------------------------------------------------------------------------|

Yes. Timely submitting the required forms is required to be eligible for a payment. The settlement agreement contains a release of legal claims. If the proposed settlement agreement becomes final then you will be releasing Amedisys (and certain related people and entities) from all of the claims described in Section 9 above. This means you will no longer be able to sue Amedisys for any of those claims, or to continue with a legal action, or be part of any other legal action against Amedisys for any of those claims. However, as noted in Section 11 below, the same release applies if you do not submit the required forms to receive a payment.

| 11. | Are my legal rights affected if I *do not* submit the required forms to receive a payment? |
|-----|--------------------------------------------------------------------------------------------|

Yes. Even if you do not return the required tax forms to receive a settlement payment, you will not be able to

start a legal action, continue with a legal action, or be part of any other legal action against Amedisys (and certain related people and entities) for any of the claims described in Section 9 above. Additionally, if you do nothing, and do not return the required tax forms, you will not receive any money from this proposed settlement.

| 12. | Do the named plaintiff/class representatives receive any additional payment? |

Yes. Plaintiffs Scott Tomkins, Joseph Husk, Elizabeth Leung will ask the Court to approve payments of up to $10,500 each for their involvement in the lawsuit for the benefit of the members of the settlement classes, and for the broader release they will provide. Plaintiffs Joann Carter and Kevin Sautel will ask the Court to approve payments of up to $6,250 each for their service as class representatives and for the broader release they will provide. The Court has not yet ruled on whether it will award these amounts. The Court may deny these requests or award less than this amount. The Court will make a determination on the reasonableness of these requests at a later date.

| 13. | What happens to proposed settlement payments that are not claimed? |

Subject to Court approval, to the extent any individuals who are authorized by the settlement agreement to receive a monetary payment do not timely or properly submit the required forms, opt out the settlement, or otherwise elect not to accept the payment of their designated share of the revised gross settlement amount, their share will remain the property of Amedisys.

## HOW YOU GET A PAYMENT

| 14. | How can I get a payment? |

In order to receive a settlement payment, you must timely complete and sign the enclosed I.R.S. Form W-9 and I.R.S. Form W-4, and return those forms to the settlement administrator by U.S. Mail in the postage pre-paid enveloped included with this notice, by fax ((***) ***-****), or by e-mail ([**EMAIL FOR SETTLEMENT ADMINISTRATOR**]).

In order to be considered timely, any completed forms returned to the settlement administrator by U.S. Mail must be postmarked no later than [**MAIL DATE + 60**]. Any completed forms returned to the settlement administrator by fax or e-mail must be received no later than [**MAIL DATE + 60**]. .

If you lose, misplace, or need another one of these forms, additional copies can be downloaded at the settlement administrator's website ([**SETTLEMENT ADMINISTRATOR WEBSITE**]). Alternatively, you can contact the settlement administrator by telephone at (***) ***-**** to request a new copy.

| 15. | When would I get my payment? |

If you are eligible to participate in the settlement and timely provide the forms described in Section 14 above, you will be sent a settlement check approximately 22 days after the effective date of the settlement. Before the settlement is effective, however, settlement class members must be given time to object to the settlement or opt-out, the Court must hold a hearing to consider the fairness of the settlement and grant final approval of the settlement, and any appeals of the court's order granting final approval must be resolved. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| **16.    Can I decide not to participate in the settlement?** |
| --- |

Not without prior Court approval.  Opt-in plaintiffs who previously submitted a written consent form requesting to join the FLSA collective action in this lawsuit agreed to be bound by any settlement of the case.

| **17.    If I participate in the settlement, can I sue this defendant for the same thing later?** |
| --- |

No.  Unless you request and receive the Court's permission to exclude yourself from this lawsuit, you give up any right to sue defendant for the claims that this settlement resolves, which are set forth in Section 9 above.  If you have a pending lawsuit asserting the claims resolved by this settlement, speak to your lawyer in the pending lawsuit immediately.  You must exclude yourself from this settlement to continue your own lawsuit against Amedisys regarding the claims resolved by this settlement.

| **18.    If I receive the Court's permission to exclude myself, can I get money from this settlement?** |
| --- |

No.

## THE LAWYERS REPRESENTING YOU

| **19.    Do I have a lawyer in this case?** |
| --- |

Opt-in plaintiffs and class members are represented in this case by the following attorneys and law firms:

| | |
| --- | --- |
| Christine E. Webber, Esq.<br>COHEN MILSTEIN SELLERS & TOLL, PLLC<br>1100 New York Avenue, Suite 500 West<br>Washington, DC 20005<br>(202) 408-4600<br>www.cohenmilstein.com<br>cscherman@cohenmilstein.com | Gilda Adriana Hernandez, Esq.<br>THE LAW OFFICES OF GILDA A.<br>  HERNANDEZ, PLLC<br>315 S. Salem Street, Suite 310<br>Apex, NC 27502<br>(919) 741-8693<br>www.gildahernandezlaw.com<br>snelson@gildahernandezlaw.com |
| Richard E. Hayber, Esq.<br>HAYBER LAW FIRM, LLC<br>221 Main Street<br>Hartford, CT 06106<br>(860) 522-8888 | |

The Court decided that these lawyers and law firms are qualified to represent the settlement class members in this case.  These lawyers are called "class counsel."  You do not need to hire your own lawyer because class counsel is working on your behalf in this action.  However, should you choose to retain your own lawyer, you must do so at your own expense.

| 20. | How will the lawyers be paid? |
|---|---|

Class counsel will ask the Court to approve payment of up to 33.33% of the gross settlement amount (*i.e.*, up to $2,666,666.67) to them for attorneys' fees. They also will ask the Court to approve payment from the gross settlement amount of the costs they incurred in prosecuting this lawsuit, not to exceed $112,000. The Court has not yet ruled on class counsel's request for an award of attorneys' fees and costs. The Court may award less than the amounts class counsel request. The Court will make a determination on the reasonableness of class counsel's application at a later date.

# OBJECTING TO THE SETTLEMENT

| 21. | How do I object/tell the Court that I do not like the proposed settlement? |
|---|---|

If you are an opt-in plaintiff, or a member of the settlement class who has not requested exclusion from the settlement, you may object to the settlement if you do not agree with it or some part of it. To do so, you must file with the Court, and serve on counsel for the parties, a written statement giving the reasons why you object to the proposed settlement. The top of any such objections to the approval of the proposed settlement should be labeled at the top with the name and case number of this lawsuit ("*Tomkins, et al. v. Amedisys Inc.*, No. 3:12-cv-1082 (WWE)") and must include: (i) your full name, address, telephone number, the dates of your employment with Amedisys, Inc., and the Amedisys care center(s) where you worked; and (ii) each specific reason for your objection, including any legal or evidentiary support you have for your objection.

You must mail copies of the objection to the Court, class counsel, and counsel for Amedisys (addresses below), postmarked no later than **[MAIL DATE + 60]**:

> THE COURT
> Clerk of Court
> U.S. District Court for the District of Connecticut
> Brien McMahon Federal Building
> 915 Lafayette Boulevard
> Bridgeport, CT 06604
>
> CLASS COUNSEL
> Christine E. Webber, Esq.
> COHEN MILSTEIN SELLERS & TOLL PLLC
> 1100 New York Avenue, N.W., Suite 500 East
> Washington, DC 20005
>
> COUNSEL FOR AMEDISYS
> Michael S. McIntosh, Esq.
> LITTLER MENDELSON, P.C.
> 1650 Tysons Boulevard, Suite 700
> McLean, VA 22102

You may also ask the Court for permission to speak at the fairness hearing, as described below in Section 26, if you submit a timely objection.

---

**22.     What happens if the Court rejects my objection?**

The Court will consider any objections that are timely filed. This does not mean, however, that the Court will necessarily take action based on any objection. If the Court rejects your objection, you will still be bound by the terms of the settlement and the release of claims explained in Section 9 above.

Moreover, if you intend to object to the settlement, but still wish to receive a settlement payment, you must timely file the required claim form and tax form described in Section 14 above. If the Court approves the settlement despite your objections, and you have not timely filed the required forms necessary to receive a settlement payment, you will not receive a settlement payment.

---

**23.     What's the difference between objecting and asking the Court to exclude me?**

Objecting is simply telling the Court you do not like something about the settlement. You can object only if you stay in the settlement. If you ask the Court to exclude you from this lawsuit, you are telling the Court you do not want to be part of the lawsuit or settlement. If you are granted permission to exclude yourself from the lawsuit, you have no basis to object to the settlement, because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

---

**24.     When and where will the Court decide whether to approve the settlement?**

The Court will hold a fairness hearing on **[DATE OF FAIRNESS HEARING]** at **[TIME]**, in Courtroom 3, Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard - 2nd Floor Annex, Bridgeport, Connecticut 06604. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections to the settlement, the Court will consider them. Judge Eginton will also listen to people who have asked to speak at the hearing. The hearing may be continued without further notice to opt-in plaintiffs or other class members. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

---

**25.     Do I have to come to the hearing?**

No. Class counsel will answer questions Judge Eginton may have about the settlement. However, if you have timely filed an objection with the Court, and wish to be heard in support of your objection, you are welcome to come at your own expense. Even if you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not required.

---

**26.     May I speak at the hearing?**

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Hearing on Final Approval of Class Settlement in *Tomkins, et al. v. Amedisys Inc.*, No. 3:12-cv-1082 (WWE)." Be sure to include your full name, address, telephone number, and signature. Your notice of intention to appear must be postmarked no later than **[MAIL + 60]**, and be sent to the Clerk of Court, and to class counsel and defense counsel, at the addresses list above in Section 21.

## NO RETALIATION OR DISCRIMINATION

| | |
|---|---|
| 27. | If I am a current employee, will I experience any retaliation or discrimination? |

No.  It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement agreement.   Amedisys will not discriminate or retaliate against you in any way because of your decision to participate or not in the lawsuit or this settlement.

## ADDRESS CHANGES

| | |
|---|---|
| 28. | What if my address changes? |

It is your responsibility to inform the settlement administrator of your correct address.  Please mail any change of address, along with your date of birth, former address, and new address to *Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator, c/o Epiq Class Action & Mass Tort Solutions, Inc., *********, **********, ** *****-**** or call (***) ***-****.

## IF YOU DO NOTHING

| | |
|---|---|
| 29. | What happens if I do nothing at all? |

You have the right to do nothing.  If you do nothing, however, you will not receive any money from this proposed settlement, but you will still be bound by the Court's orders in this lawsuit and the release of claims explained in Section 9 above.  You will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Amedisys regarding the claims resolved by this settlement.

## GETTING MORE INFORMATION

| | |
|---|---|
| 30. | Are there more details about the settlement? |

This notice summarizes the basic terms of the proposed settlement.  Further information is available from the settlement administrator and/or class counsel.

More details of the settlement are also contained in the stipulation of settlement and the pleadings and other documents relating to the lawsuit that are on file with the U.S. District Court for the District of Connecticut. Copies of the complete stipulation of settlement and select other filings in the lawsuit are available at www.[agreed URL].com.  All filings are available online at the Court's Electronic Case Files ("ECF") website (https://ecf.ctd.uscourts.gov/cgi-bin/login.pl), at a cost of $.10 per page.  In order to access documents via that website, you must first sign-up for a Public Access to Court Electronic Records ("PACER") account (http://www.pacer.gov).  You may also contact settlement administrator, identified above, and they will mail or email you a copy of the full stipulation of settlement.

| | |
|---|---|
| 31. | How do I get more information? |

You can call (***) ***-**** toll free; write to *Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator, c/o Epiq Class Action & Mass Tort Solutions, Inc., *********, **********, ** *****-****; or visit the website at **[SETTLEMENT ADMINISTRATOR WEBSITE]**, where you will find answers to common questions

- 11 -

about the proposed settlement and other information.  In addition, you may contact class counsel whose contact information is provided in Section 19.

**PLEASE DO NOT CALL THE COURT, THE CLERK, OR AMEDISYS OR ITS COUNSEL ABOUT THIS SETTLEMENT.**

Firmwide:134797156.7 057897.1038

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

### TOMKINS, *ET. AL* V. AMEDISYS, INC.

# IF YOU WORKED FOR AMEDISYS, INC. AS A REGISTERED NURSE, PHYSICAL THERAPIST, OCCUPATIONAL THERAPIST, OR SPEECH LANGUAGE THERAPIST, AND WERE PAID PER VISIT, IT IS IMPORTANT THAT YOU READ THIS NOTICE OF A PROPOSED SETTLEMENT.

- This is a Court-authorized notice.  This is not a solicitation from a lawyer.

- Clinicians have sued Amedisys, Inc. alleging they were not paid correctly for all hours worked.  The Court has permitted this lawsuit to proceed on a class-action basis for purposes of a potential settlement.

- The Court has not decided whether Amedisys Inc. did anything wrong.  However, the parties have proposed a settlement of this case and the Court has authorized notice of that proposed settlement to individuals who may be eligible to participate in it.  Amedisys's and/or plaintiffs' records indicate you are entitled to receive notice and that you may be entitled to a monetary award under the settlement.

- *Your legal rights are affected whether you act or not.  Your options are explained in this notice.  Please read it carefully.*

## YOU MUST RETURN THE ENCLOSED CLAIM FORM AND TAX FORMS BY [MAIL + 60] TO RECEIVE A PAYMENT FROM THIS SETTLEMENT.

## ALTERNATIVELY, YOU HAVE UNTIL [MAIL + 60] TO SUBMIT A WRITTEN REQUEST TO BE EXCLUDED FROM THIS SETTLEMENT IF YOU DO NOT WANT TO BE BOUND BY THE COURT'S RULINGS IN THIS ACTION.

- [MAIL + 60] is also the deadline to object to the settlement

### SUMMARY

The settlement provides a cash payment to certain current and former employees of Amedisys, Inc. who worked as full-time Registered Nurses, Physical Therapists, Occupational Therapists, or Speech Language Therapists, or in a similar position, in the company's home health division, and who were paid on a "per-visit" basis.  The amount of the payments to each settlement participant will vary.

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RECEIVE A SETTLEMENT PAYMENT** | **If you would like to receive a settlement payment** if the Court approves the proposed settlement, **you must complete the claim form and tax forms provided along with this notice** and return them to the Settlement Administrator, as explained below in Section 14. Anyone who receives a settlement payment will also be bound by the release of claims explained below in |

|  | Section 9. |
| --- | --- |
| **DO NOTHING, DO NOT RECEIVE A SETTLEMENT PAYMENT** | **If you do nothing**, and do not return the forms provided along with this notice, **you will not receive a settlement payment**. However, as explained in Sections 11 and 30 below, unless you request to be excluded from the settlement you will still be bound by the release of claims explained in Section 9 if the Court approves the settlement. |
| **OBJECT** | Unless you request to be excluded from the settlement, as explained in Section 17, you can write the Court about why you do not like the settlement. |
| **EXCLUDE YOURSELF, GET NO SETTLEMENT PAYMENT, BUT RETAIN YOUR RIGHTS** | You may ask to be excluded from the settlement. Sections 16 through 19 below explain this option. Individuals who request exclusion will not be eligible to receive a settlement payment and will not be bound by the release of claims explained in Section 9 if the Court approves the settlement. |

- These rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Settlement payments will be made if the Court approves the settlement and after any appeals are resolved.

## BASIC INFORMATION

| 1. | **Why did I get this notice?** |
| --- | --- |

You have received this notice package because records indicate you worked for Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division, were paid on a "per-visit" basis, AND:

    (a.) Worked in the Commonwealth of Pennsylvania between July 25, 2009, and **[DATE OF PRELIMINARY APPROVAL]**, and were not hired for the first time after September 2013 and did not, as a condition of employment, agree to be subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration);

    OR

    (b.) Worked in the Commonwealth of Kentucky between February 28, 2010, and **[DATE OF PRELIMINARY APPROVAL]**, and are not subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration).

This notice is designed to advise you of how you can participate in this settlement and how to opt out of the settlement if you wish to be excluded. The Court sent you this notice because you have a right to know about a proposed settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after objections and appeals are resolved, the individual settlement payments provided for by the settlement will be made.

- 2 -

2027162.2

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the lawsuit is the United States District Court for the District of Connecticut. The judge presiding over the action is Senior United State District Judge Warren W. Eginton. The case is *Tomkins, et al., v. Amedisys, Inc.*, No. 3:12-CV-01082 (WWE). The people who sued are the "plaintiffs" and the company they sued, Amedisys, Inc., is the "defendant."

| 2. | **What is this lawsuit about?** |
|----|--------------------------------|

Plaintiffs Scott Tomkins, Joseph Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel worked as clinicians in defendant Amedisys, Inc.'s home health division. They claim that Amedisys treated them, and other similarly situated clinicians, as exempt from federal and state overtime requirements, but paid such individuals using a "per-visit" compensation model that did not comply with applicable regulations for exempt employees. Plaintiffs further argue that when Amedisys treated them and other per-visit clinicians as "non-exempt" and overtime eligible, it required them to work without reporting all hours and/or did not use the appropriate methodology for computing their overtime pay, thus, denying them full pay for all hours worked, including overtime. Plaintiffs allege Amedisys violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the Commonwealths of Pennsylvania and Kentucky, Penn. Min. Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.100, *et seq.*; Ky. Wage & Hour Act ("KWHA"), Ky. Rev. Stat. Ann. § 337.020, *et seq.* Based on these allegations, plaintiffs seek to recover unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

Amedisys denies each and all of plaintiffs' allegations and expressly denies any and all charges of wrongdoing or liability in this lawsuit. To the contrary, Amedisys contends it acted in compliance with applicable state and federal laws and paid per-visit clinicians all wages due. Accordingly, Amedisys believes plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs are without merit. Amedisys also denies that the asserted claims are appropriate for class or collective action treatment.

| 3. | **What is a "class action," what is a "collective action," and who is involved?** |
|----|--------------------------------|

Under the FLSA, a group of similarly situated individuals may seek to recover unpaid overtime wages and related damages in what is known as a "collective action." In a collective action, those plaintiffs who file consents, or "opt in" to the lawsuit, become plaintiffs. They are sometimes referred to as "opt-in plaintiffs." The individuals who initiate the lawsuit, the "named plaintiffs," bring the action on behalf of themselves and other people they believe have similar claims who may later choose to join the action.

This type of "opt-in" collective action is different from the better-known "class action," in which no consent is needed to join. In a traditional class action, the "named plaintiffs" sue on behalf of all individuals within a defined class. Individuals who meet the class definition, the "class members," are automatically members of that class unless they file a written request with the Court specifically asking to be excluded.

The named plaintiffs here – Scott Tomkins, Joseph Husk, Elizabeth Leung, Joann Carter, and Kevin Sautel – filed this case as both a collective action and a class action. The collective action under federal law includes full-time Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Language Therapists in the company's home health division who were paid on a "per-visit" basis and already opted in to this case by filing a written consent with the Court. Additionally, the named plaintiffs sought to bring class actions under Pennsylvania and Kentucky state law on behalf of classes of such full-time, per-visit clinicians who worked in Pennsylvania between July 25, 2009 and **[DATE OF PRELIMINARY APPROVAL]** or in Kentucky between

- 3 -

February 28, 2010 and **[DATE OF PRELIMINARY APPROVAL]**.

In both types of cases, if the court certifies plaintiffs' claims for class or collective treatment, one court resolves the issues in the case for all opt-in plaintiffs and class members. Here, Senior United State District Judge Warren W. Eginton is in charge of this putative collective/class action. While the Court had not decided whether to grant final certification to plaintiffs' collective-action or class-action claims in the lawsuit, the Court authorized notice be sent to opt-in plaintiffs and potential class members while the Court decides whether to permit this case to proceed as a class action for purposes of settlement.

| 4. | Why is there a settlement? |
|---|---|

Litigation is risky, and neither side can predict the outcome with certainty. This lawsuit has been heavily litigated for a significant period of time (approximately three years) and it would likely be several more years before any final resolution could be reached through litigation.

Given these factors, the named plaintiffs/class representatives and their counsel concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of the opt-in plaintiffs and class members. This settlement avoids the costs and inconvenience associated with the discovery process, as well as the costs and risks associated with dispositive motions and trial, while providing cash benefits to opt-in plaintiffs and class members.

Amedisys expressly denies any liability or wrongdoing and contends it has complied with the applicable federal and state laws at all times. By entering into the settlement agreement, Amedisys has not admitted any liability or wrongdoing and expressly denies the same. However, like the named plaintiffs and their counsel, Amedisys recognizes the cost and delay associated with further litigation, and the risk inherent in all lawsuits. As such, Amedisys agreed to enter into a settlement to avoid the costs and disruption of ongoing litigation and to settle the outstanding claims against it.

The Court has not decided in favor of plaintiffs or Amedisys. Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation. District Judge Eginton has, however, granted preliminary approval to the parties' proposed settlement.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I am part of the settlement? |
|---|---|

You are eligible to participate in the settlement if you were employed by Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division, were paid on a "per-visit" basis, AND:

    (a.) Worked in the Commonwealth of Pennsylvania between July 25, 2009, and **[DATE OF PRELIMINARY APPROVAL]**, and were not hired for the first time after September 2013 and did not, as a condition of employment, agree to be subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration);

    OR

    (b.) Worked in the Commonwealth of Kentucky between February 28, 2010, and **[DATE OF**

PRELIMINARY APPROVAL], and are not subject to Amedisys's Dispute Resolution Agreement (which requires individuals to submit most employment-related disputes to mandatory arbitration).

If you were mailed this notice, Amedisys's records indicate that you fulfill one of these conditions.

Additionally, opt-in plaintiffs who previously submitted a written consent form requesting to join the FLSA collective action in *Tomkins, et al., v. Amedisys, Inc.* (No. 3:12-CV-01082 (WWE) are entitled to participate in this proposed settlement.

| 6. | Are there exceptions to being included? |
|---|---|

Class members who are part of the proposed settlement because they meet one of the definitions above for Kentucky or Pennsylvania state law claims, who validly request exclusion, as explained in Section 17 below, will not be included in the settlement, and will receive no settlement payment, but will not be bound by the release of claims explained in Section 9 below.

## THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET

| 7. | What does the proposed settlement provide? |
|---|---|

Amedisys has agreed to pay a total settlement amount of $8,000,000 (the "gross settlement amount") in full settlement of the claims of all opt-in plaintiffs and class members. The gross settlement amount includes all payments to individual opt-in plaintiffs and class members, plaintiffs' attorney's fees and litigation expenses, service awards to the named plaintiffs/class representatives, costs of notice of the settlement, and costs of administration of the settlement. The amount remaining after the payment of class counsel's attorney's fees and expenses, service awards, and costs of settlement administration and notice is referred to as the "revised gross settlement amount." The revised gross settlement amount, less required tax withholdings, will be distributed to individuals who are members of the settlement classes (*i.e.*, opt-in plaintiffs and current and former clinicians from Pennsylvania and Kentucky who meet he definitions in Section 5 above) who timely return the required tax and claim forms explained below in Section 14. The settlement distribution process will be administered by an independent settlement administrator (the "settlement administrator") approved by the Court.

| 8. | What can I get from the proposed settlement? |
|---|---|

If the Court approves the proposed settlement and you timely submit the required claim form and tax forms, you will receive a settlement check. All individuals who are eligible to participate in the settlement, and timely submit the required forms, will receive a *minimum* gross payment of one-hundred dollars ($100.00). The exact amount of each individual opt-in plaintiff's payment will depend on a number of factors, including, among others, the number of weeks worked for Amedisys during the relevant time period, the hours reported working each week, the number and type of visits completed each week, and their effective hourly rate. The average claim for overtime due per workweek will be calculated for each position (i.e. RN, Physical Therapist) for Kentucky and for Pennsylvania based upon the opt-in plaintiffs data that has been provided. The average per week overtime claim will then be used to calculate settlement awards for each Kentucky or Pennsylvania class member who did not opt-in to the FLSA action, and whose individual hours and pay rates were thus not made available.

Each final settlement payment will be separated into two equal amounts: fifty percent (50%) will be allocated to the claims asserted in the lawsuit for unpaid overtime and other wage-related damages, and fifty percent

(50%) will be allocated to the claims asserted in the lawsuit for liquidated damages and other relief. The portion allocated to claims asserted in this lawsuit for unpaid overtime and other wage-related damages will be subject to all authorized or required deductions, just as if it were a regular paycheck, including, but not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to claims for unpaid overtime and other claims for unpaid wages will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages and other relief will be reported as non-wage income and reported on an I.R.S. Form 1099. Additionally, the portion of the total settlement fund that is approved by the Court to pay attorneys' fees and litigation expenses is considered to be payments made on behalf of the class members. Therefore, your pro rata portion of that amount will be reported as income to you on an I.R.S. Form 1099. You should consult a tax professional about tax treatment of these payments, and the availability of a tax deduction for your pro-rated amount of attorneys' fees paid.

| 9. | What am I giving if I participate in the settlement? |
|----|----|

Unless you exclude yourself from the settlement by **[MAIL DATE + 60]**, 2015 using the procedure explained below in Section 17, the Court's orders will bind you and you will be barred from bringing any action against Amedisys, Inc. (including its officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, employee benefits plans, insurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations) that relate to hours worked or the payment of wages, except to the extent that any such claims may not be waived as a matter of law.

This release of claims against Amedisys, Inc. specifically includes, without limitation:

(i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under Pennsylvania state law, including but not limited to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 330.101, *et seq.*, and Pennsylvania Wage Payment Collection Law, 42 Pa. Stat. Ann. § 330.101, *et seq.*, and any and all claims under Kentucky state law, including but not limited to Kentucky's Wage and Hour Act, KRS Ch. 337; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit, quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This release has no application to any claim by any Class Member for discrimination in violation of state or federal law, or any claim of any type arising on or after the date the settlement has received final approval from

- 6 -

2027162.2

the U.S. District Court for the District of Connecticut, or any other court taking jurisdiction over this Litigation.

This release of claims includes past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which you have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law, and shall extend to any such claims that arose at any time up to and including the date this settlement has received final approval from the Court, except with respect to claims of retaliation, which shall extend to any such claims that arose at any time up to and including **[DATE OF PRELIMINARY APPROVAL]**.

---

**10.    Are my legal rights affected if I submit the required forms to receive a payment?**

Yes.  Timely submitting the required claim form and tax forms is required to be eligible for a payment.  The settlement agreement contains a release of legal claims.  If you do not exclude yourself from the settlement by **[MAIL DATE + 60]**, using the procedure explained below in Section 17, and the proposed settlement agreement becomes final, then you will be releasing Amedisys (and certain related people and entities) from all of the claims described in Section 9 above.  This means you will no longer be able to sue Amedisys for any of those claims, or to continue with a legal action, or be part of any other legal action against Amedisys for any of those claims.  However, as noted in Section 11 below, the same release applies if you do not submit the required forms to receive a payment.

---

**11.    Are my legal rights affected if I *do not* submit the required forms to receive a payment?**

Yes, unless you exclude yourself from the settlement by **[MAIL DATE + 60]**, using the procedure explained below in Section 17.  Unless you timely exclude yourself from the settlement, even if you do not return the required claim form and tax forms to receive a settlement payment, you will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Amedisys (and certain related people and entities) for any of the claims described in Section 9 above.  Additionally, if you do nothing, and do not return the required claim for or tax forms, you will not receive any money from this proposed settlement.

---

**12.    Do the named plaintiff/class representatives receive any additional payment?**

Yes.  Plaintiffs Scott Tomkins, Joseph Husk, Elizabeth Leung will ask the Court to approve payments of up to $10,500 each for their involvement in the lawsuit for the benefit of the members of the settlement classes, and for the broader release they will provide.  Plaintiffs Joann Carter and Kevin Sautel will ask the Court to approve payments of up to $6,250 each for their service as class representatives and for the broader release they will provide.  The Court has not yet ruled on whether it will award these amounts.  The Court may deny these requests or award less than this amount.  The Court will make a determination on the reasonableness of these requests at a later date.

---

**13.    What happens to proposed settlement payments that are not claimed?**

Subject to Court approval, to the extent any individuals who are authorized by the settlement agreement to receive a monetary payment do not timely or properly submit the required claim and/or tax forms, opt out the settlement using the procedures explained in Section 17 below, or otherwise elect not to accept the payment of their designated share of the revised gross settlement amount, their share will remain the property of Amedisys.

## HOW YOU GET A PAYMENT

| **14.** | **How can I get a payment?** |
|---|---|

In order to receive a settlement payment, you must timely complete and sign the enclosed claim form, I.R.S. Form W-9, and I.R.S. Form W-4, and return those forms to the settlement administrator by U.S. Mail in the postage pre-paid enveloped included with this notice, by fax ((***) ***-****), or by e-mail ([**EMAIL FOR SETTLEMENT ADMINISTRATOR**]).

In order to be considered timely, any completed forms returned to the settlement administrator by U.S. Mail must be postmarked no later than [**MAIL DATE + 60**]. Any completed forms returned to the settlement administrator by fax or e-mail must be received no later than [**MAIL DATE + 60**]. .

If you lose, misplace, or need another one of these forms, additional copies can be downloaded at the settlement administrator's website ([**SETTLEMENT ADMINISTRATOR WEBSITE**]). Alternatively, you can contact the settlement administrator by telephone at (***) ***-**** to request a new copy.

| **15.** | **When would I get my payment?** |
|---|---|

If you are eligible to participate in the settlement and timely provide the forms described in Section 14 above, you will be sent a settlement check approximately 22 days after the effective date of the settlement. Before the settlement is effective, however, settlement class members must be given time to object to the settlement or opt-out, the Court must hold a hearing to consider the fairness of the settlement and grant final approval of the settlement, and any appeals of the court's order granting final approval must be resolved. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| **16.** | **Can I decide not to participate in the settlement?** |
|---|---|

Yes. Settlement class members who are not named plaintiffs or opt-in plaintiffs, and who do not want to be part of the settlement or who want to keep the right to sue or continue to sue defendant in another action about the issues in this lawsuit or any other claim that relates to hours worked or the payment of wages, may request exclusion from the settlement. This is sometimes referred to as "opting out" of the settlement class.

| **17.** | **How do I opt out of the settlement?** |
|---|---|

If you wish to exclude yourself from the settlement (*i.e.*, to "opt out"), you must submit a written statement to the settlement administrator expressly stating that you wish to be excluded from the settlement. Such requests for exclusion should state at the top of the letter "Request for Exclusion from Settlement in *Tomkins, et al. v. Amedisys Inc.*, No. 3:12-cv-1082 (WWE)." Also be sure to include your name, address, telephone number, and signature. All written requests for exclusion must be sent by First-Class U.S. Mail, postmarked no later than [**MAIL DATE + 60**], to:

*Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator
c/o Epiq Class Action & Mass Tort Solutions, Inc.
********
**********, ** *****-****

- 8 -

2027162.2

You cannot exclude yourself by phone or by e-mail.  Requests for exclusion that do not include all required information, or that are not timely postmarked, will be deemed null, void, and ineffective.

If you timely ask to be excluded from the settlement, you will not receive any settlement payment, and you cannot object to the settlement.  You also will not be legally bound by anything that happens in this lawsuit with respect to the settled claims.  You may be able to sue (or continue to sue) Amedisys concerning the claims that this settlement resolves.

| 18. | If I do not exclude myself, can I sue this defendant for the same thing later? |
|---|---|

No.  Unless you exclude yourself, you give up any right to sue defendant for the claims that this settlement resolves, which are set forth in Section 9 above.  If you have a pending lawsuit asserting the claims resolved by this settlement, speak to your lawyer in the pending lawsuit immediately.  You must exclude yourself from this settlement to continue your own lawsuit against Amedisys regarding the claims resolved by this settlement.

| 19. | If I exclude myself from the settlement, can I get money from this settlement? |
|---|---|

No.

## THE LAWYERS REPRESENTING YOU

| 20. | Do I have a lawyer in this case? |
|---|---|

Opt-in plaintiffs and class members who do not request exclusion from the settlement are represented in this case by the following attorneys and law firms:

| Christine E. Webber, Esq.<br>COHEN MILSTEIN SELLERS & TOLL, PLLC<br>1100 New York Avenue, Suite 500 West<br>Washington, DC 20005<br>(202) 408-4600<br>www.cohenmilstein.com<br>cscherman@cohenmilstein.com | Gilda Adriana Hernandez, Esq.<br>THE LAW OFFICES OF GILDA A.<br>  HERNANDEZ, PLLC<br>315 S. Salem Street, Suite 310<br>Apex, NC 27502<br>(919) 741-8693<br>www.gildahernandezlaw.com<br>snelson@gildahernandezlaw.com |
|---|---|
| Richard E. Hayber, Esq.<br>HAYBER LAW FIRM, LLC<br>221 Main Street<br>Hartford, CT 06106<br>(860) 522-8888 | |

The Court decided that these lawyers and law firms are qualified to represent the settlement class members in this case.  These lawyers are called "class counsel."  You do not need to hire your own lawyer because class counsel is working on your behalf in this action.  However, should you choose to retain your own lawyer, you must do so at your own expense.

2027162.2

| 21. | How will the lawyers be paid? |
|-----|-------------------------------|

Class counsel will ask the Court to approve payment of up to 33.33% of the gross settlement amount (*i.e.*, up to $2,666,666.67) to them for attorneys' fees. They also will ask the Court to approve payment from the gross settlement amount of the costs they incurred in prosecuting this lawsuit, not to exceed $112,000. The Court has not yet ruled on class counsel's request for an award of attorneys' fees and costs. The Court may award less than the amounts class counsel request. The Court will make a determination on the reasonableness of class counsel's application at a later date.

# OBJECTING TO THE SETTLEMENT

| 22. | How do I object/tell the Court that I do not like the proposed settlement? |
|-----|-----------------------------------------------------------------------------|

If you are an opt-in plaintiff or a member of the settlement class and have not requested exclusion from the settlement, you may object to the settlement if you do not agree with it or some part of it. To do so, you must file with the Court, and serve on counsel for the parties, a written statement giving the reasons why you object to the proposed settlement. The top of any such objections to the approval of the proposed settlement should be labeled at the top with the name and case number of this lawsuit ("*Tomkins, et al. v. Amedisys Inc.*, No. 3:12-cv-1082 (WWE)") and must include: (i) your full name, address, telephone number, the dates of your employment with Amedisys, Inc., and the Amedisys care center(s) where you worked; and (ii) each specific reason for your objection, including any legal or evidentiary support you have for your objection.

You must mail copies of the objection to the Court, class counsel, and counsel for Amedisys (addresses below), postmarked no later than **[MAIL DATE + 60]**:

> <u>THE COURT</u>
> Clerk of Court
> U.S. District Court for the District of Connecticut
> Brien McMahon Federal Building
> 915 Lafayette Boulevard
> Bridgeport, CT 06604
>
> <u>CLASS COUNSEL</u>
> Christine E. Webber, Esq.
> COHEN MILSTEIN SELLERS & TOLL PLLC
> 1100 New York Avenue, N.W., Suite 500 East
> Washington, DC 20005
>
> <u>COUNSEL FOR AMEDISYS</u>
> Michael S. McIntosh, Esq.
> LITTLER MENDELSON, P.C.
> 1650 Tysons Boulevard, Suite 700
> McLean, VA 22102

You may also ask the Court for permission to speak at the fairness hearing, as described below in Section 27, if you submit a timely objection.

2027162.2

| 23. | What happens if the Court rejects my objection? |
|---|---|

The Court will consider any objections that are timely filed. This does not mean, however, that the Court will necessarily take action based on any objection. If the Court rejects your objection, you will still be bound by the terms of the settlement and the release of claims explained in Section 9 above.

Moreover, if you intend to object to the settlement, but still wish to receive a settlement payment, you must timely file the required claim form and tax form described in Section 14 above. If the Court approves the settlement despite your objections, and you have not timely filed the required forms necessary to receive a settlement payment, you will not receive a settlement payment.

| 24. | What's the difference between objecting and excluding myself? |
|---|---|

Objecting is simply telling the Court you do not like something about the settlement. You can object only if you stay in the settlement. If you exclude yourself from this lawsuit, you are telling the Court you do not want to be part of the lawsuit or settlement. If you request to be excluded from the lawsuit, you have no basis to object to the settlement, because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

| 25. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a fairness hearing on **[DATE OF FAIRNESS HEARING]** at **[TIME]**, in Courtroom 3, Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard - 2nd Floor Annex, Bridgeport, Connecticut 06604. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections to the settlement, the Court will consider them. Judge Eginton will also listen to people who have asked to speak at the hearing. The hearing may be continued without further notice to opt-in plaintiffs or other class members. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 26. | Do I have to come to the hearing? |
|---|---|

No. Class counsel will answer questions Judge Eginton may have about the settlement. However, if you have timely filed an objection with the Court, and wish to be heard in support of your objection, you are welcome to come at your own expense. Even if you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not required.

| 27. | May I speak at the hearing? |
|---|---|

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Hearing on Final Approval of Class Settlement in *Tomkins, et al. v. Amedisys Inc.*, No. 3:12-cv-1082 (WWE)." Be sure to include your full name, address, telephone number, and signature. Your notice of intention to appear must be postmarked no later than **[MAIL + 60]**, and be sent to the Clerk of Court, and to class counsel and defense counsel, at the addresses list above in Section 22. You cannot speak at the hearing if you submitted a written request for exclusion from the settlement (*i.e.*, if you have

- 11 -

"opted out").

## NO RETALIATION OR DISCRIMINATION

| 28. | If I am a current employee, will I experience any retaliation or discrimination? |
|---|---|

No. It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement agreement. Amedisys will not discriminate or retaliate against you in any way because of your decision to participate or not in the lawsuit or this settlement.

## ADDRESS CHANGES

| 29. | What if my address changes? |
|---|---|

It is your responsibility to inform the settlement administrator of your correct address. Please mail any change of address, along with your date of birth, former address, and new address to *Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator, c/o Epiq Class Action & Mass Tort Solutions, Inc., *********, **********, ** *****-**** or call (***) ***-****.

## IF YOU DO NOTHING

| 30. | What happens if I do nothing at all? |
|---|---|

You have the right to do nothing. If you do nothing, however, you will not receive any money from this proposed settlement. In addition, unless you timely return a written request for exclusion, you will be bound by the Court's orders in this lawsuit and the release of claims explained in Section 9 above. You will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Amedisys regarding the claims resolved by this settlement.

## GETTING MORE INFORMATION

| 31. | Are there more details about the settlement? |
|---|---|

This notice summarizes the basic terms of the proposed settlement. Further information is available from the settlement administrator and/or class counsel.

More details of the settlement are also contained in the stipulation of settlement and the pleadings and other documents relating to the lawsuit that are on file with the U.S. District Court for the District of Connecticut. Copies of the complete stipulation of settlement and select other filings in the lawsuit are available at www.[agreed URL].com. All filings are available online at the Court's Electronic Case Files ("ECF") website (https://ecf.ctd.uscourts.gov/cgi-bin/login.pl), at a cost of $.10 per page. In order to access documents via that website, you must first sign-up for a Public Access to Court Electronic Records ("PACER") account (http://www.pacer.gov). You may also contact settlement administrator, identified above, and they will mail or email you a copy of the full stipulation of settlement.

2027162.2

| 32. | How do I get more information? |
|-----|-------------------------------|

You can call (***) ***-**** toll free; write to *Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator, c/o Epiq Class Action & Mass Tort Solutions, Inc., *********, **********, ** *****-****; or visit the website at **[SETTLEMENT ADMINISTRATOR WEBSITE]**, where you will find answers to common questions about the proposed settlement and other information.  In addition, you may contact class counsel whose contact information is provided in Section 20.

**PLEASE DO NOT CALL THE COURT, THE CLERK, OR AMEDISYS OR ITS COUNSEL ABOUT THIS SETTLEMENT.**

Firmwide:134731908.3 057897.1038

# Exhibit 2

*Tomkins, et al. v. Amedisys, Inc.*
Case No. 3:12-cv-1082 (WWE)
United States District Court for the District of Connecticut

[Class Member Name]
[Mailing Address 1]
[Mailing Address 2]
[City, State ZIP]

## CLAIM FORM

**In order to receive a settlement payment, you must submit this Claim Form, an I.R.S. Form W-4, and an I.R.S. Form W-9 to the Settlement Administrator.  To be considered timely, these forms must be postmarked by no later than [MAIL DATE + 60] if returned by U.S. Mail, or received by [MAIL DATE + 60] if returned by fax or e-mail.**

SEND ALL DOCUMENTS TO:

***Tomkins, et al. v. Amedisys, Inc.* Settlement Administrator**
**c/o Epiq Class Action & Mass Tort Solutions, Inc.**
**\*\*\*\*\*\*\*\*\***
**\*\*\*\*\*\*\*\*\*\*, \*\* \*\*\*\*\*-\*\*\*\***

**Fax:  (\*\*\*) \*\*\*-\*\*\*\***
**E-mail:  [EMAIL FOR SETTLEMENT ADMINISTRATOR]**

| **Name and Address Updates:** |
| --- |
| *If your name or address is different from what is printed above, please provide updated information below:* |

First Name                    MI             Last Name

Mailing Address                         Apt/Unit

City                          State          ZIP Code

By completing and signing this Claim Form, I verify that I meet one or more of the following two sets of conditions:

(a)    I was employed by Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division in the Commonwealth of Pennsylvania at some point in time between July 25, 2009, and **[DATE OF PRELIMINARY APPROVAL]**, and was paid on a "per-visit" basis.

    or

(b)    I was employed by Amedisys, Inc. as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, or Speech Language Therapist, or similar position, in the company's home health division in the Commonwealth of Kentucky at some point in time between February 28, 2010, and **[DATE OF PRELIMINARY APPROVAL]**,

and was paid on a "per-visit" basis.

I understand that this lawsuit claims that Amedisys did not pay per visit clinicians as required by the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the laws of the Commonwealths of Pennsylvania and Kentucky, Penn. Min. Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.100, *et seq.*; Ky. Wage & Hour Act ("KWHA"), Ky. Rev. Stat. Ann. § 337.020, *et seq.*, as explained in the notice of a the proposed settlement that I received along with this claim form.

**I wish to participate in the parties' proposed settlement if approved by the Court.** If the Court grants final approval to the parties' proposed settlement, I agree to be bound by any adjudication of this action by the Court. I understand that the Court has appointed Christine E. Webber, Esq. of Cohen Milstein Sellers & Toll, PLLC, Gilda A. Hernandez, Esq. of The Law Offices of Gilda A. Hernandez, PLLC, and Richard E. Hayber, Esq. of Hayber Law Firm, LLC, to represent the plaintiff class, including me, in this action.

I hereby acknowledge and agree that by participating in this settlement, I will forever completely settle, compromise, release, and discharge Amedisys, Inc. from any and all claims and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which I have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law, as more fully explained in the notice of a the proposed settlement that I received along with this claim form.

I further agree that, since I am settling disputed claims, I will not accept, recover, or receive any back pay, liquidated damages, other damages, or any other form of relief based on any claim or cause of action released in this settlement in any other individual, class, or collective action, or any administrative or arbitral action against Amedisys, Inc. I also further acknowledge and agree that I am enjoined from pursuing any claim released in this settlement.

Should the waiver and release of claims I am acknowledging and agreeing to herein be ruled unenforceable for any reason, I agree to execute a valid release of equal scope.

I further represent and warrant that no claim or cause of action that I am releasing as part of this settlement has been assigned or transferred to any person or entity, in whole or part.

I understand that I must keep the Settlement Administrator informed of my current address and of any change in my address. If I do not do so, I understand that I may not receive any settlement payment that I might otherwise be entitled to receive.

**I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.**

_____          _____
Signature                                              Date

_____          _____
Print Name                                            City, State